United States Court of Appeals
Fifth Circuit

**F I L E D**

January 12, 2006

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 03-50596

---

ISAAC RAMIREZ-MOLINA,

Petitioner-Appellee,

VERSUS

JAMES ZIGLAR; Et Al,

Respondents,

GRACE WINFREY,
INTERIM FIELD OFFICE DIRECTOR FOR DETENTION AND REMOVAL,
BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT,
DEPARTMENT OF HOMELAND SECURITY,

Respondent-Appellant.

---

Appeal from the United States District Court
for the Western District of Texas

---

Before GARWOOD, SMITH, and DEMOSS,
  Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Isaac Ramirez-Molina challenges the rein-statement of a removal order. Treating this action as a petition for review, we conclude

that we are without jurisdiction, so we dismiss the petition.

Ramirez-Molina was removed from the United States in 1999 on the basis of a conviction of driving while intoxicated ("DWI"). Shortly after removal, he reentered the United States in violation of federal law. The Immigration and Naturalization Service ("INS") took him into custody and initiated proceedings to reinstate the removal order.

After the removal, but before the INS sought reinstatement of the order, this court determined that a DWI conviction is not ground for removal under the relevant immigration statute. Citing that decision, Ramirez-Molina brought a habeas corpus action challenging the reinstatement of the removal order on due process grounds. The district court granted habeas relief.

Pursuant to the REAL ID Act, we reverse the district court's finding of habeas jurisdiction and instead consider the challenge to the reinstatement of the removal order as a petition for review. Finding no jurisdiction to entertain the merits of the claim, we dismiss the petition.

I.

Ramirez-Molina first entered the United States in 1984 and became a lawful permanent resident in 1991. In August 1999 he was convicted in state court of DWI, a third-degree felony, and sentenced to ten years' confinement, suspended and probated to five years' community supervision. At that time he had been convicted of DWI on at least three occasions.

On December 6, 1999, the INS[1] issued a notice to appear to Ramirez-Molina, asserting that he was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) on the ground that he had been convicted of an "aggravated felony," which is defined by 8 U.S.C. § 1101(a)(43)(F) to include a "crime of violence" with a term of imprisonment of at least one year. A withdrawn opinion of this court had indicated that DWI is a crime of violence. *See Camacho-Marroquin v. INS*, 188 F.3d 649, 652 (5th Cir. 1999), *withdrawn*, 222 F.3d 1040 (5th Cir. 2000).

Ramirez-Molina did not contest removability but, instead, on December 22, 1999, submitted a Stipulated Request for Final Order of Removal and Waiver of Hearing in which he conceded that he was "removable as charged," waived the right to a hearing, accepted a written order of removal, and waived appeal of that written order. On December 28, 1999, the immigration judge granted the request for a final order and ordered him removed to El Salvador; he was removed on February 4, 2000.

About two weeks after his removal, Ramirez-Molina reentered the United States in violation of 8 U.S.C. § 1326(a) and was taken into custody by the INS on December 18, 2001. The next day, the INS issued a Notice of Intent/Decision to Reinstate Prior [Removal] Order pursuant to 8 U.S.C. § 1231(a)(5), which authorizes such reinstatement by the Attorney

---

[1] The INS ceased to exist on March 1, 2003. Its enforcement functions have been assumed by the Bureau of Immigration and Customs Enforcement ("BICE"), an agency within the Department of Homeland Security. But, because the events in this case took place before the reorganization of immigration enforcement duties, we refer to the agency as the INS.

General when an alien illegally reenters after being removed. After a reinstatement, § 1231(a)(5) allows the Attorney General to remove the alien without additional proceedings. Ramirez-Molina was also indicted for illegal reentry under § 1326, but the district court dismissed the indictment.

On May 13, 2002, Ramirez-Molina filed motions with the Executive Office for Immigration Review requesting a stay of removal and asking that the 1999 removal proceedings be reopened and terminated on the basis of *United States v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001), in which a panel of this court reached a conclusion opposite to that reached in the withdrawn opinion in *Camacho-Marroquin* and stated that DWI is not a crime of violence. Accordingly, in this circuit a DWI conviction is no longer an aggravated felony that triggers removability.

Ramirez-Molina contended that *Chapa-Garza* applies retroactively to his 1999 removal proceedings, rendering those proceedings, and therefore reinstatement of the resulting removal order, invalid. The immigration judge granted a stay of removal on May 14, 2002, without ruling on the motion to reopen and terminate. On May 24, 2002, Ramirez-Molina filed his habeas petition, contending that (1) the 1999 removal order was invalid because, given our subsequent decision in *Chapa-Garza*, it was based on an erroneous interpretation of the law; (2) the invalidity of the underlying removal order meant that his reentry was lawful and outside the scope of 8 U.S.C. § 1231(a)(5) (thus precluding reinstatement of the prior order); and (3) the reinstatement proceedings were in violation of due process because they were initiated on the basis of an invalid removal order.

Adopting the report of a magistrate judge,

the district court conditionally granted habeas relief, holding that pursuant to *INS v. St. Cyr*, 533 U.S. 289, 311 (2001), it had jurisdiction under 28 U.S.C. § 2241 to review the removal order in a habeas proceeding. With regard to the merits, the court held that *Chapa-Garza* applies retroactively to the 1999 removal proceedings, rendering them "fundamentally unfair" because the INS misinterpreted the law. On that basis, the court determined that the 1999 removal order was void *ab initio* and therefore held that reinstatement of the order was improper. The issuance of the writ was conditioned on the government's failure to vacate both the underlying order of removal and the reinstatement order within ten days.

II.

After the government filed its appeal, Congress on May 11, 2005, enacted the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, which amends the Immigration and Nationality Act ("INA") by explicitly foreclosing habeas review of removal orders and by providing that a petition for review is the sole and exclusive means of judicial review for all removal orders except those issued pursuant to 8 U.S.C. § 1225(b)(1). *See* Pub. L. No. 109-13, 119 Stat. 231, 310, § 106(a)(1)(B). More specifically, the REAL ID Act amends 8 U.S.C. § 1252(a)-(2)(C) to provide that the wholesale preclusion of judicial review where a removal order is based on, *inter alia*, the alien's commission of an aggravated felony includes a preclusion of habeas review. *See* Pub. L. No. 109-13, 119 Stat. 231, 310, § 106(a)(1)(A)(ii). The REAL ID Act thus supplies, in this context, the "clear statement of congressional intent to repeal habeas jurisdiction" that the *St. Cyr* Court found lacking.

Aside from addressing the clarity with which congressional intent needs to be expressed, the Court in *St. Cyr* also asserted that

3

if the jurisdictional provisions of the INA did in fact preclude all judicial review in certain circumstances, as they now do as a result of the REAL ID Act, then Suspension Clause concerns would be implicated with regard to "pure questions of law." *St. Cyr*, 533 U.S. at 300. The REAL ID Act addresses this consideration in § 1252(a)(2)(D), which provides that

> [n]othing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

Thus, although habeas jurisdiction to review removal orders issued on the basis of an alien's conviction of an aggravated felony has been foreclosed by the REAL ID Act, federal courts of appeals now have jurisdiction, subject to other provisions of § 1252 and jurisdictional conditions outside the scope of the INA, to consider, on a petition for review, constitutional claims and questions of law with regard to such orders on a petition for review. Congress specified that the provisions of the REAL ID Act were to take effect immediately and retroactively upon enactment. *See* Pub. L. No. 109-13, 119 Stat. 231, 311, § 106(b).

As a consequence of this new jurisdictional framework, "[w]e can no longer consider . . . challenge[s] [to removal orders] in the context of habeas review. . . . Rather, we must now determine whether [petitioner's] challenge is properly converted into a petition for review under the REAL ID Act and, if so, whether we have jurisdiction to entertain that petition." *Rosales v. BICE*, 426 F.3d 733, 736 (5th Cir. 2005) (per curiam), *cert. denied*, 2006 U.S.

LEXIS 619 (U.S. Jan. 9, 2006).[2] Although Congress provided that a habeas petition pending before a district court as of the REAL ID Act's effective date was to be transferred to the appropriate court of appeals and converted into a petition for review, *see* Pub. L. No. 109-13, 119 Stat. 231, 311, § 106(c), it did not specify what was to happen to habeas petitions that were already on appeal as of that effective date.

Following the Third and Ninth Circuits,[3] we have decided that "despite Congress's silence on this issue, habeas petitions on appeal as of May 11, 2005, . . . are properly converted into petitions for review." *Rosales*, 426 F.3d at 736. Exercising our undeniable appellate jurisdiction over the government's appeal of the grant of habeas relief, we therefore reverse the district court's finding of habeas jurisdiction and convert the instant habeas appeal into a petition for review.[4] We turn

---

[2] On the basis of the REAL ID Act, the government filed a motion to convert the habeas appeal into a petition for review. Ramirez-Molina does not oppose conversion. Nevertheless, because conversion implicates jurisdictional issues, we must determine for ourselves whether it is appropriate.

[3] *See Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1052-53 (9th Cir. 2005); *Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005).

[4] At oral argument, there was some confusion with regard to whether we should convert the habeas petition into a petition for review of the original 1999 removal order or of the reinstatement of that order. We conclude that Ramirez-Molina's challenge is now properly converted into a petition for review of the reinstatement. The initial habeas petition demonstrates that he is challenging reinstatement on the ground that the underlying removal order is invalid. Although the validity of the
(continued...)

4

now to whether we have jurisdiction to entertain the petition for review.

### III.

We review questions of law as to jurisdiction *de novo*. *See Bissonnet Invs., LLC v. Quinlan*, 320 F.3d 520, 522 (5th Cir. 2003); *In re Liljeberg Enters., Inc.,* 304 F.3d 410, 423 (5th Cir. 2002). We utilize that standard of review here.

### A.

Nothing in the REAL ID Act precludes our jurisdiction over this petition. As we noted in the previous section, the REAL ID Act allows the courts of appeals to review constitutional and legal claims regarding removal orders even where the Act renders an order otherwise unreviewable. Because Ramirez-Molina challenges reinstatement of the 1999 removal order on constitutional and legal grounds, we are not barred from reviewing his claims merely because the INA, as amended by the REAL ID Act, generally forecloses all judicial review of removal orders issued on the basis of an alien's conviction of an aggravated felony. *See* 8 U.S.C. § 1252(a)(2)(C), (D).

The REAL ID Act has in fact removed one barrier to our jurisdiction that might otherwise have existed. Title 8 U.S.C. § 1231(a)(5) specifies that when the Attorney General reinstates an order of removal after an alien re-enters the United States in violation of that order, the order "is not subject to being reopened or reviewed." In the aftermath of *St.*

*Cyr*, questions arose about the circumstances under which § 1231(a)(5) can operate to preclude judicial review of an underlying removal order in the context of a habeas proceeding regarding reinstatement.[5] The problem was that if there were no judicial review available to an alien in the initial removal proceedings, then § 1231(a)(5)'s foreclosure of judicial review of constitutional and legal claims regarding that order after reinstatement arguably would implicate the Suspension Clause concerns articulated in *St. Cyr*.[6]

The REAL ID Act renders that discussion moot by codifying § 1252(a)(2)(D). In addition to carving out exceptions to the jurisdiction-stripping provisions of § 1252 for constitutional and legal claims, § 1252(a)(2)(D) states that "[no] other provision of this chapter . . . which limits or eliminates judicial review, shall be construed as precluding constitutional claims or claims of law." Section 1231 is in the same chapter as § 1252. Because § 1231(a)(5) limits judicial review, § 1252(a)(2)(D) prevents its operation in cases, such as this one, in which the validity of an underlying order is questioned on constitutional or legal grounds.

### B.

The REAL ID Act does not, however, foreclose the applicability of two other jurisdictional barriers: the requirement that administrative remedies be exhausted before an alien seeks judicial review of a removal order[7] and

---

[4](...continued) 1999 removal order is thus central to the claims, it is the INS's decision to reinstate that order that is the subject of direct attack. Converting a habeas petition into a petition for review changes the form, but not the substance, of a challenge to executive action.

[5] *See Smith v. Ashcroft*, 295 F.3d 425 (4th Cir. 2002); *Alvarenga-Villalobos v. Ashcroft*, 271 F.3d 1169, 1173 (9th Cir. 2001).

[6] *See Smith*, 295 F.3d at 428-29.

[7] A court may review a final order of removal (continued...)

the fact that the initial removal proceedings must constitute a gross miscarriage of justice, *Lara v. Trominski*, 216 F.3d 487, 491 (5th Cir. 2000), for this court to entertain a collateral attack on a removal order. Given our conclusion, which we will explain, that there is no gross miscarriage here, we pretermit discussion of the exhaustion question.

In *Lara*, *id.*, we held that "[w]e can review [a] collateral challenge to [a] prior deportation order if and only if that deportation involved a gross miscarriage of justice."[8] Ramirez-Molina is challenging reinstatement of the 1999 removal order on the ground that the already-executed order is invalid. Thus, even presented in the form of a petition for review instead of a habeas petition, the crux of his claim constitutes a collateral attack on the 1999 removal order. Accordingly, in the context of a petition for review of a reinstatement decision, we can review the validity of the underlying removal order only if Ramirez-Molina establishes that there was a gross miscarriage of justice in the initial proceedings.[9]

This court has yet to develop a precise standard for what constitutes a gross miscarriage of justice sufficient to allow us to consider the merits of a petitioner's collateral attack on a removal order. For purposes of this case, it is enough to note one crucial consideration that leads us to conclude that there was no gross miscarriage of justice in the 1999 removal proceedings: Ramirez-Molina failed to contest his removability in those proceedings.

There, Ramirez-Molina conceded removability and waived appeal of the removal order. "[S]uch waivers are a critical factor in denying claims that deportation proceedings constituted a gross miscarriage of justice." *Id.* at 494. Our holding in *Steffner* provides the basis for this comment in *Lara*. Although the statutory framework in effect at the time of *Steffner* was somewhat different from the one governing this case, the relevant facts underlying *Steffner* are remarkably similar to those at issue here.

Steffner was deported in 1936 for past membership in the Communist Party. The Supreme Court then determined that only present

---

[7](...continued)

only if "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d).

[8] *See also Ponce-Gonzalez v. INS*, 775 F.2d 1342, 1345 (5th Cir. 1985); *United States ex rel. Steffner v. Carmichael*, 183 F.2d 19, 20 (5th Cir. 1950).

[9] In the context of a criminal indictment for illegal reentry under § 1326, courts have explicit statutory authority to entertain and grant a motion to suppress the underlying removal order that allegedly renders reentry illegal if a consideration of certain factors makes the order invalid. The factors courts must consider arise from *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), but the
(continued...)

[9](...continued)

statutorily-granted authority to entertain a collateral attack on a removal order underlying a criminal indictment does not extend to a collateral attack on a removal order underlying a reinstatement order, which is civil in nature. *See id.* at 839 ("We note parenthetically that permitting collateral challenge to the validity of deportation orders in proceedings under § 1326 does not create an opportunity for aliens to delay deportation, since the collateral challenge we recognize today is available only in criminal proceedings instituted after reentry."). Our precedents that establish the factors to be considered under *Mendoza-Lopez* to allow a collateral attack on an underlying removal order in criminal proceedings are therefore irrelevant to this case.

membership in a subversive organization can render an alien deportable. *See Kessler v. Strecker*, 307 U.S. 607 (1939). Without the permission of the Attorney General to reapply for admission, Steffner reentered the United States in 1941. Immigration authorities took him into custody and initiated deportation proceedings on the basis of the 1936 order. Steffner argued that he could not be deported because *Strecker* had rendered the 1936 order void *ab initio*. This court refused to find a gross miscarriage of justice sufficient to warrant collateral review of the 1936 order, in large part because Steffner

> did not elect to test the validity of his 1936 deportation order. He had his day before the immigration authorities, who decided that he should be deported. There is no showing that his failure to test the validity of his order was due to any cause other than his desire not to do so.

*Steffner*, 183 F.2d at 20-21.

The government contends that *Steffner* applies to this case and yields the same result. Ramirez-Molina counters that we cannot give weight to his failure to contest the 1999 order in the initial proceedings because, unlike the alien in *Steffner*, he had no chance to challenge those proceedings in federal court. Ramirez-Molina's attempt to distinguish *Steffner* fails, because this court had the power to rule in Ramirez-Molina's favor had he appealed here after pursuing any required administrative procedures. Had he sought review in this court before he was removed, we would have had jurisdiction to consider his claim.

Notwithstanding the fact that § 1252(a)-(2)(C) precludes judicial review of removal orders issued on the basis of the alien's commission of an aggravated felony, we retain jur-isdiction to determine our own jurisdiction. *Salazar-Regino v. Trominski*, 415 F.3d 436, 443 (5th Cir. 2005). Whether an offense is an aggravated felony is a jurisdiction-triggering fact: If we determined that DWI was not an aggravated felony (as we eventually did in *Chapa-Garza*), § 1252(a)(2)(C) would not apply, and we could review and vacate any removal order based on a DWI conviction. *Camacho-Marroquin* was not an absolute bar to our ruling in Ramirez-Molina's favor, because we could have overruled that decision en banc.

In short, had Ramirez-Molina appealed to this court, he could have attained the result that was ultimately achieved by the petitioner in *Chapa-Garza*. The fact that Ramirez-Molina erroneously believed no avenue of federal judicial review was available is of no consequence. Because he failed to contest his removability in the 1999 proceedings, he cannot establish that there was a gross miscarriage of justice in those proceedings. Therefore, we have no jurisdiction to entertain his collateral challenge to the validity of the 1999 order, so we find it unnecessary to discuss the merits of that claim.

In summary, we REVERSE the district court's finding of habeas jurisdiction, convert the habeas petition into a petition for review, and DISMISS the petition for review for want of jurisdiction.