United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 23, 2006**

Charles R. Fulbruge III
Clerk

*In The United States Court Of Appeals
For The Fifth Circuit*

No. 05-60566

DAVID ITURBE-COVARRUBIAS,

Petitioner,

v.

ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals
No. A39 066 717

Before SMITH, GARZA, and OWEN, Circuit Judges.

PER CURIAM:[*]

David Iturbe-Covarrubias ("Iturbe") petitions this court for review of a final order of

the Board of Immigration Appeals ("BIA") finding him removable and ineligible for relief

from removal. For the reasons that follow, Iturbe's petition is DENIED.

**I**

Iturbe is a native and citizen of Mexico, who became a permanent resident of the

United States. He was convicted in March 1998 of the felony offense of driving while

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

intoxicated ("DWI") under Texas Penal Code § 49.09 (driving a motor vehicle while intoxicated with two or more prior convictions) and was sentenced to a prison term of four years. The Immigration and Naturalization Service ("INS") initiated removal proceedings, alleging that Iturbe was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an "aggravated felony."[1] On March 18, 1999, an Immigration Judge ("IJ") found Iturbe removable as charged, concluding that felony DWI is a "crime of violence" as defined by 18 U.S.C. § 16(b)[2] and therefore an aggravated felony. The IJ further held that the felony DWI conviction rendered Iturbe ineligible for any form of relief and ordered him removed to Mexico. Iturbe appealed to the BIA, and the BIA affirmed, specifically relying on *In re Puente-Salazar*[3] and *Camacho-Marroquin v. I.N.S.*,[4] which held that "felony DWI is a crime of violence" and "therefore an aggravated felony and deportable offense."[5] Iturbe did not petition this court for review and was deported to Mexico.

In March 2001, we held in *United States v. Chapa-Garza* that "felony DWI is not a

---

[1]The term "aggravated felony" is defined by 8 U.S.C. § 1101(a)(43)(F) as "a crime of violence (as defined in [18 U.S.C. § 16], but not including a purely political offense) for which the term of imprisonment [is] at least one year."

[2]Section 16 of Title 18 defines a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ."

[3]22 I. & N. Dec. 1006 (BIA 1999).

[4]188 F.3d 649 (5th Cir. 1999) (per curiam), *withdrawn*, 222 F.3d 1040 (5th Cir. 2000).

[5]*Id.* at 652.

crime of violence . . . ."[6]  Iturbe subsequently reentered the United States without the permission of the Attorney General.  He was thereafter arrested and is currently in the custody of the United States Marshals Service, charged with unlawful reentry into the United States following deportation.  On March 10, 2005, Iturbe filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 in the district court, arguing that his 1999 removal order should be vacated based on our opinion in *Chapa-Garza*.  Iturbe also filed a complaint for declaratory and injunctive relief.  Pursuant to the REAL ID Act,[7] the district court severed the habeas petition challenging the removal order and transferred it to this court as a petition for review.  Proceedings on the complaint for declaratory and injunctive relief were stayed, pending resolution of Iturbe's challenge to his removal order.

## II

As an initial matter, we must determine whether Iturbe's habeas petition was "properly converted into a petition for review under the REAL ID Act and, if so, whether we have jurisdiction to entertain that petition."[8]  In May 2005, Congress passed the REAL ID Act, which "divested federal [district] courts of jurisdiction over § 2241 [habeas] petitions

---

[6]243 F.3d 921, 927 (5th Cir. 2001).

[7]Pub. L. No. 109-13, § 106(c), 119 Stat. 231, 311 (May 11, 2005) (requiring district courts to transfer any pending habeas cases to the appropriate court of appeals, which shall be treated as if it had been filed pursuant to a petition for review).

[8]*Rosales v. Bureau of Immigration and Customs Enforcement*, 426 F.3d 733, 736 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 1055 (2006).

attacking removal orders . . . ."[9]  Under § 106(a) of the REAL ID Act, "a petition for review . . . shall be the sole and exclusive means for judicial review of an order of removal . . . ."[10]  The Act mandates that all pending habeas petitions challenging an order of removal be transferred to the appropriate court of appeals and converted into a petition for review.[11]  Because Iturbe's § 2241 habeas petition was pending before the district court on May 11, 2005, the REAL ID Act's effective date, it is clear that the habeas petition was properly converted into a petition for review.  At issue is whether we have jurisdiction to entertain Iturbe's petition for review—a question we review *de novo*.[12]

Under 8 U.S.C. § 1252(a)(2)(C), "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [an aggravated felony] . . . ."  However, the REAL ID Act expressly provides that § 1252(a)(2)(C) shall not "be construed as precluding review of constitutional claims or questions of law raised upon a petition for review . . . ."[13]  Iturbe challenges his removal order, arguing that because a felony DWI is no longer a deportable offense, we should vacate the BIA's decision and remand the case with instructions that the removal proceedings be

---

[9]*Id.*

[10]Pub. L. No. 109-13, § 106(a), 119 Stat. 231, 310.

[11]*Id.* § 106(c), 119 Stat. at 311.

[12]*Ramirez-Molina v. Ziglar*, 436 F.3d 508, 513 (5th Cir. 2006) ("We review questions of law as to jurisdiction *de novo*.").

[13]Pub. L. No. 109-13, § 106(a), 119 Stat. 231, 310 (codified as 8 U.S.C. § 1252(a)(2)(D)).

terminated. Because Iturbe's challenge rests on a question of law (whether *Chapa-Garza* invalidates the 1999 removal order), § 1252(a)(2)(C) does not bar us from reviewing Iturbe's claim.

"The REAL ID Act does not, however, foreclose the applicability of . . . other jurisdictional barriers . . . ."[14] In *Ramirez-Molina v. Ziglar*, for example, we held that notwithstanding the REAL ID Act, "in the context of a petition for review of a reinstatement decision, we [have jurisdiction to] review the validity of the underlying removal order only if [the alien] establishes that there was a gross miscarriage of justice in the initial proceedings."[15] In *Ramirez-Molina*, an alien was removed from the United States on the basis of a DWI conviction. Shortly after removal, the alien unlawfully reentered the United States. The INS discovered the alien and initiated proceedings to reinstate his removal order under 8 U.S.C. § 1231(a)(5), which authorizes the Attorney General to remove the alien without further proceedings. After the alien was removed, but before the INS sought reinstatement of the removal order, we issued *Chapa-Garza*, which as mentioned above, held that a DWI conviction is not a ground for removal. The alien filed a habeas petition, contending that his 1999 removal order was invalidated by *Chapa-Garza*.

On appeal, we converted the alien's habeas petition into a petition for review of the

---

[14]*Ramirez-Molina*, 436 F.3d at 514.

[15]*Id.* (relying on *Lara v. Trominski*, 216 F.3d 487, 492 (5th Cir. 2000), for the proposition that this court "can review [a] collateral challenge to [a] prior deportation order if and only if that deportation involved a gross miscarriage of justice").

5

reinstatement[16] because, "[a]lthough the validity of the 1999 removal order [was] . . . central to the [alien's] claims, it [was] the INS's decision to reinstate that order that [was] the subject of direct attack."[17] However, we concluded that we lacked jurisdiction to consider the alien's challenge to the validity of the original removal order because he failed to petition this court for review of that order, and thus, could not establish a gross miscarriage of justice in the earlier proceedings.[18]

*Ramirez-Molina* is distinguishable because in that case, the alien's habeas petition demonstrated that he was challenging the reinstatement of the original removal order, whereas here, Iturbe seeks direct review of the original order itself. Under § 106(c) of the REAL ID Act, we shall treat Iturbe's habeas petition "as if it had been filed pursuant to a petition for review under . . . section 242, except that [the 30-day time limit for filing a petition for review] shall not apply."[19] We agree with the Seventh Circuit's recent interpretation of § 106(c):

> [A]ll collateral proceedings pending on May 11, 2005, when the REAL ID Act took effect, and transferred to courts of appeals under § 106(c), must be treated as timely petitions for review, no matter how long it has been since the Board rendered its decision. Collateral proceedings filed on or after May 11,

---

[16]*See Rosales v. Bureau of Immigration and Customs Enforcement*, 426 F.3d 733, 736 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 1055 (2006) (holding that "habeas petitions on appeal as of [the REAL ID Act's effective date] . . . are properly converted into petitions for review").

[17]*Ramirez-Molina*, 436 F.3d at 513 n.4 ("Converting a habeas petition into a petition for review changes the form, but not the substance, of a challenge to executive action.").

[18]*Id.* at 515.

[19]Pub. L. No. 109-13, § 106(c), 119 Stat. 231, 311.

6

however, will be dismissed outright; the window for belated judicial review has closed.[20]

Therefore, although Iturbe did not file his habeas petition until approximately six years after the BIA affirmed his removal order, we have jurisdiction to review his claim because it was pending before the district court on May 11, 2005, the REAL ID Act's effective date.

When a court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule."[21]  However, because "[b]oth the public and the [BIA] have significant, cognizable interests in the finality of immigration proceedings[,]"[22] a "completed and final" removal order may withstand a subsequent change in the interpretation of the immigration laws.[23]  Otherwise, as the respondent noted, there would

---

[20]*Medellin-Reyes v. Gonzales*, 435 F.3d 721, 723-24 (7th Cir. 2006).

[21]*Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993); *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995) ("New legal principles, even when applied retroactively, do not apply to cases already closed."); *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 541 (1991) ("[R]etroactivity in civil cases must be limited by the need for finality . . . ."); *Teague v. United States*, 489 U.S. 288, 308 (1989) ("[I]t has long been established that a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule."); *see also Paul v. INS*, 521 F.2d 194, 197 (5th Cir. 1975) ("Deportation hearings are deemed to be civil, not criminal, proceedings.").

[22]*Hernandez-Rodriguez v. Pasquarell*, 118 F.3d 1034, 1042-43 (5th Cir. 1997) (citing *INS v. Abudu*, 485 U.S. 94, 107 (1988) ("There is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases.")).

[23]*See Alvarenga-Villalobos v. Ashcroft*, 271 F.3d 1169, 1172 (9th Cir. 2001) (declining to retroactively apply "to [a] prior order of deportation a new rule that did not take effect until two-and-a-half years after [the alien] had been deported").

7

be "chaos in the enforcement of the immigration laws as previously deported aliens could seek another opportunity for review of their executed order with each shift in the immigration laws."

An alien's removal proceedings are "completed and final" when the alien is actually removed pursuant to a removal order.[24] Iturbe contends on appeal that there is no evidence in the record that he was ever removed, and therefore, his removal proceedings were not final and still pending when we decided *Chapa-Garza*. Iturbe's argument, however, is unsupported by the record. In his habeas petition, Iturbe admitted that, "[a]fter the initial decision in *Camacho-Marroquin* [which held that felony DWI is an 'aggravated felony'], and *before it was withdrawn*, [he] was deported to Mexico."[25] Iturbe further revealed that he "returned to the U.S. without obtaining prior permission from the Attorney General." Iturbe's admissions make it apparent that his removal order had been legally executed at the time we decided *Chapa-Garza*. Therefore, *Chapa-Garza* does not affect his case. Accordingly, his petition for review is DENIED.

---

[24]*Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 675 (5th Cir. 2003) (holding that removal proceedings are "completed and final" after a person is actually deported pursuant to a removal order); *Galvan-Escobar v. Gonzales*, 151 Fed. Appx. 327, 330 (5th Cir. 2005) (per curiam) ("Once removed from the country, Galvan's case was effectively finished.").

[25]Emphasis added.

8