# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 22, 2019

Lyle W. Cayce
Clerk

No. 15-60526

MELIDA TEREZA LUNA-GARCIA DE GARCIA, also known as Melida Luna-Garcia, also known as Melina Luna Garcia de Garcia,

   Petitioner,

v.

WILLIAM P. BARR, U. S. ATTORNEY GENERAL,

   Respondent.

Petitions for Review of Orders
of the Board of Immigration Appeals
BIA No. A097 831 833

Before JOLLY, ELROD, and WILLETT, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

   Melinda Tereza Luna-Garcia de Garcia, a citizen of Guatemala, petitions for review of her reinstated removal order, the order of the Board of Immigration Appeals (BIA) denying withholding of removal and protection under the Convention Against Torture (CAT), and the BIA's order denying her motion to reopen based on purportedly new evidence. We deny Luna-Garcia's petitions for review.

## I.

   In 2004, Luna-Garcia entered the United States without inspection and was detained by U.S. Customs and Border Protection (Border Patrol) shortly

No. 15-60526

thereafter. The Border Patrol issued a Notice to Appear (NTA) and initiated removal proceedings against Luna-Garcia. On June 10, 2004, an immigration judge (IJ) held a hearing, but Luna-Garcia failed to appear. The IJ found that because Luna-Garcia failed to provide an address at which she could receive notice, no notice could be sent. The IJ subsequently ordered Luna-Garcia to be removed *in absentia*.

Luna-Garcia voluntarily departed the United States in 2007, attempted to return to the United States in 2014, and was detained by the border agents. The Department of Homeland Security sought to reinstate the prior removal order. During the reinstatement proceeding, Luna-Garcia expressed a fear of returning to Guatemala, but an asylum officer determined that she did not have a reasonable fear of persecution or torture. The IJ disagreed and allowed Luna-Garcia to apply for relief from removal. Before the IJ, Luna-Garcia contended that she faced future persecution because Luna-Garcia's mother-in-law and sister-in-law testified against a Guatemalan national—believed to be a gang member—who raped and murdered Luna-Garcia's other sister-in-law in New York. Luna-Garcia alleged that she was in danger of future persecution based on three incidents in Guatemala: (1) three unknown men appearing at her sister-in-law's funeral; (2) anonymous phone calls threatening her father-in-law; and (3) someone breaking windows at her brother's home. These allegations formed the basis of Luna-Garcia's application for withholding of removal and protection under the CAT.

The IJ denied Luna-Garcia's application for withholding of removal and protection under the CAT. In denying withholding of removal, the IJ found that Luna-Garcia did not "testify as to who those men [present at the funeral] were, why they passed by the funeral, or any reason they would harm her, apart from her speculation." The IJ further found that unfulfilled threats to Luna-Garcia's father-in-law did not establish persecution and that she failed

No. 15-60526

to connect the broken windows at her brother's home to her family members' testimony.  In denying CAT protection, the IJ found that Luna-Garcia failed to show that the Guatemalan government would acquiesce in her torture as her own testimony showed that the police responded to her calls.  The BIA affirmed the denial of relief, and Luna-Garcia petitioned this court for review in July 2015.

After Luna-Garcia filed her first petition for review, she also filed a motion to reopen before the BIA, claiming to have found additional evidence. Luna-Garcia sought to introduce, as additional evidence, the entire transcript of her family members' testimony and an affidavit from Dr. Max Manwaring regarding Guatemala's conditions.  The BIA concluded that the trial transcript would not materially alter the finding that she would not be persecuted or tortured, and that the pertinent information contained in Dr. Manwaring's affidavit was not previously unavailable.  The BIA thus denied Luna-Garcia's motion to reopen because, in its view, the additional evidence was immaterial and not previously unavailable.  In October 2015, Luna-Garcia sought review of the BIA's denial of her motion to reopen.

In the petitions for review before this court, Luna-Garcia (1) collaterally attacks the underlying 2004 removal order that was reinstated when she illegally re-entered the United States in 2014; (2) seeks review of the BIA's 2015 order dismissing her appeal of the IJ's denial of withholding of removal and CAT protection; and (3) requests review of the BIA's order denying her motion to reopen based on purportedly new evidence.

## II.

We first turn to Luna-Garcia's collateral attack on the underlying 2004 *in absentia* removal order.  Luna-Garcia argues that she did not receive written notice of the hearing and that the *in absentia* removal order resulted in a gross miscarriage of justice.  *But see* 8 U.S.C. § 1229a(b)(5)(B) ("No written notice

3

shall be required . . . if the alien has failed to provide the address required under [8 U.S.C. § 1229(a)(1)(F)].").  Luna-Garcia seeks to use this collateral attack as a vehicle for us to decide a legal question whether an alien may satisfy her obligation to provide an address to immigration officials to receive notice by providing a foreign address rather than a U.S. address.[1]  The government argues that we lack jurisdiction to entertain Luna-Garcia's collateral attack.  Reviewing "questions of law as to jurisdiction *de novo*," we agree with the government that we lack jurisdiction to consider Luna-Garcia's collateral attack on the underlying removal order.  *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 513 (5th Cir. 2006).

Under 8 U.S.C. § 1231(a)(5), if an alien "has reentered the United States illegally after . . . having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed."  Despite § 1231(a)(5)'s sweeping jurisdiction-stripping language, we have observed that "§ 1231(a)(5)'s effect of stripping appellate jurisdiction is subject to the INA's 'savings provision for constitutional claims or questions of law' " in 8 U.S.C. § 1252(a)(2)(D).  *Mejia v. Whitaker*, 913 F.3d 482, 488 (5th Cir. 2019) (quoting *Rodriguez-Saragosa v. Sessions*, 904 F.3d 349, 354 (5th Cir. 2018)); *see also Ramirez-Molina*, 436 F.3d at 513–14.  The savings provision in § 1252(a)(2)(D) states:

---

[1] This collateral attack is not the only vehicle through which Luna-Garcia seeks our answer on this question.  Luna-Garcia also filed a motion to reopen and rescind with the IJ and the BIA pursuant to 8 U.S.C. § 1229a(b)(5)(C), which allows her to seek rescission of an *in absentia* removal order "at any time if [she] demonstrates that [she] did not receive notice." As we have previously explained, collateral attacks are separate and distinct from motions to reopen.  *Mejia*, 913 F.3d at 488 ("[M]otions to reopen are not 'collateral'; they are attempts to revisit an order made within the *same* matter, akin to an appeal or motion for reconsideration." (quoting *Rodriguez-Saragosa*, 904 F.3d at 353 n.1)).  Luna-Garcia's motion to reopen and rescind thus forms the basis of a separate set of petitions for review docketed in this court as No. 16-60847.  This current set of petitions for review—No. 15-60526— concerns Luna-Garcia's collateral attack.

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D). While recognizing that § 1252(a)(2)(D) preserves our jurisdiction for constitutional claims and questions of law, we have also held that § 1252(a)(2)(D) "does not . . . foreclose the applicability of two other jurisdictional barriers: the requirement that administrative remedies be exhausted before an alien seeks judicial review of a removal order and the fact that the initial removal proceedings must constitute a gross miscarriage of justice for this court to entertain a collateral attack on a removal order." *Ramirez-Molina*, 436 F.3d at 514 (citing *Lara v. Trominski*, 216 F.3d 487, 491 (5th Cir. 2000)).

The government argues that there is an additional barrier for an alien, whose removal order has been reinstated, to overcome in order to preserve our jurisdiction under the savings provision in § 1252(a)(2)(D): The alien must file a petition for review within 30 days of the removal order. *See* 8 U.S.C. § 1252(b)(1) ("The petition for review must be filed not later than 30 days after the date of the final order of removal."). We have not yet determined whether the 30-day deadline also applies to § 1252(a)(2)(D)'s savings provision. *See Ibarra-Leyva v. Johnson*, 623 F. App'x 163, 170 n.44 (5th Cir. 2015) ("Because we dismiss this appeal on [other] jurisdictional grounds, we need not decide whether 8 U.S.C. § 1252(b)(1)'s [30-day filing deadline] independently divests our court of jurisdiction."). We agree with the government that it does.

The 30-day filing deadline in 8 U.S.C. § 1252(b)(1) is jurisdictional. *Ramos-Lopez v. Lynch*, 823 F.3d 1024, 1027 (5th Cir. 2016). The text of the savings provision in § 1252(a)(2)(D) has not altered this jurisdictional

No. 15-60526

requirement.    The savings provision states that "[n]othing in [8 U.S.C. § 1252(a)(2)(B) or (C)], or in any other provision of this chapter (*other than this section*) which limits or eliminates judicial review shall be construed as precluding review of constitutional claims or questions of law raised upon *a petition for review filed . . . in accordance with this section*."    8 U.S.C. § 1252(a)(2)(D) (emphasis added).  The "other than this section" phrase means that the limitations on judicial review in § 1252—except for § 1252(a)(2)(B) or (C) that concerns denials of discretionary relief and orders against criminal aliens—can preclude review of constitutional and legal claims.  One such limitation in § 1252 is the 30-day filing deadline found in § 1252(b)(1). Additionally, even if that "other than this section" phrase did not exist, the savings provision plainly contemplates that a constitutional or legal claim would be raised in "a petition for review filed . . . in accordance with this section." *Id.*  A petition for review not filed within 30 days of the removal order is not a petition for review filed "in accordance with this section."

Our sister circuits that have examined the interplay between the savings provision and the 30-day filing deadline have reached the same conclusion.  In reviewing a petition for review filed by an alien who unlawfully re-entered the United States, the Tenth Circuit observed that "with two stated exceptions, the savings clause in § 1252(a)(2)(D) permitting review of such claims does not apply to jurisdictional limitations *within* that section." *Cordova-Soto v. Holder*, 659 F.3d 1029, 1031 (10th Cir. 2011).  Because the 30-day filing deadline is a jurisdictional limitation within § 1252, "[t]his jurisdictional limitation . . . 'survived the enactment of . . . § 1252(a)(2)(D).' " *Id.* at 1032 (quoting *Lorenzo v. Mukasey*, 508 F.3d 1278, 1281 n.4 (10th Cir. 2007)); *see also Sharashidze v. Mukasey*, 542 F.3d 1177, 1178–79 (7th Cir. 2008) (although not in the context of an alien who unlawfully re-entered the United States, noting that the savings provision "is explicitly constrained by the 30-day time limit in

6

§ 1252(b)(1)"). The Third Circuit adopted the Tenth Circuit's interpretation and further concluded that the 30-day filing deadline requires the alien to file a petition for review within 30 days of the original removal order, not within 30 days of the reinstatement of that removal order.[2] *Verde-Rodriguez v. Attorney Gen.*, 734 F.3d 198, 203 (3d Cir. 2013). The Third Circuit observed that § 1252(b)(1) required this result but also noted that allowing an alien to file a petition for review within 30 days of the reinstatement would "create a new and wholly unwarranted incentive for aliens who have previously been removed to re-enter the country illegally in order to take advantage of this self-help remedy." *Id.* (quoting *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 498 (9th Cir. 2017)). The Sixth Circuit, in an unpublished opinion, also relied on the Third and Tenth Circuits' cases to hold that the failure to comply with the 30-day filing deadline divested the court of its jurisdiction to review the constitutionality of the underlying removal order. *Ovalle-Ruiz v. Holder*, 591 F. App'x 397, 400–01 (6th Cir. 2014).[3]

Finally, applying the 30-day filing deadline in § 1252(b)(1) to the savings provision in § 1252(a)(2)(D) is consistent with our case law. We previously observed in *Ramirez-Molina* that "in the context of a petition for review of a reinstatement decision, we can review the validity of the underlying removal order *only if* [the alien] establishes that there was a gross miscarriage of justice

---

[2] This observation is consistent with our case law analogizing reinstatement orders to removal orders. Even under our case law, our review of reinstatement orders is limited to "the lawfulness of the reinstatement order," and we cannot " 'reopen or review' the merits of [the underlying] deportation order." *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 295 (5th Cir. 2002). In other words, we may review whether the DHS validly determined that the prerequisites for reinstatement have been met, *Rodriguez-Saragosa*, 904 F.3d at 353, but not whether the underlying removal order itself was valid except through the narrow exceptions in the savings provision, § 1252(a)(2)(D).

[3] Luna-Garcia has not pointed us to a case from a court of appeals that has disagreed with the Third, Sixth, and Tenth Circuits' interpretation of 8 U.S.C. § 1252(a)(2)(D).

in the initial proceedings." 436 F.3d at 514 (emphasis added). The phrase "only if" denotes "a *necessary*, but not a *sufficient*, condition." *In re U.S. for Historical Cell Site Data*, 724 F.3d 600, 619 (5th Cir. 2013) (quoting *California v. Hodari D.*, 499 U.S. 621, 627–28 (1991)). Thus, *Ramirez-Molina* has not foreclosed the possibility that there may be other requirements that must also be satisfied. *See Verde-Rodriguez*, 734 F.3d at 202 (the Third Circuit observing that "neither [a previous Third Circuit case] nor [the Fifth Circuit's decision in] *Ramirez-Molina* addressed the thirty-day time limit of § 1252(b)(1)."). Our decision in *Martinez v. Johnson*, 740 F.3d 1040 (5th Cir. 2014), which also concerned an alien's collateral attack on his underlying removal order after its reinstatement, is similarly inapposite as it turned on Martinez's failure to demonstrate a gross miscarriage of justice, a jurisdictional requirement apart from the 30-day filing deadline. *See id.* at 1042–43.

In sum, if an alien illegally re-enters the United States and his prior removal order is reinstated, then, pursuant to the jurisdiction-stripping provision in § 1231(a)(5), the underlying removal order cannot be reviewed, except through the savings provision in § 1252(a)(2)(D). In order to preserve our jurisdiction under § 1252(a)(2)(D)'s savings provision, an alien must file a petition for review within 30 days of the removal order as required by § 1252(b)(1), in addition to exhausting all available administrative remedies and demonstrating that the initial proceedings constituted a gross miscarriage of justice. *See Ramirez-Molina*, 436 F.3d at 514. Here, because Luna-Garcia's petition for review as it pertains to the underlying 2004 *in absentia* removal order was not filed within 30 days, we lack jurisdiction to consider Luna-Garcia's collateral attacks.

No. 15-60526

III.

We now turn to Luna-Garcia's petition for review concerning the BIA's denial of withholding of removal and protection under the CAT.[4] "We review the BIA's decision and only consider the IJ's decision to the extent that it influenced the BIA." *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009). We review questions of law *de novo* and factual findings under the substantial evidence standard, which "requires only that the BIA's decisions be supported by record evidence and be substantially reasonable." *Id.* "[R]eversal is improper unless we decide 'not only that the evidence supports a contrary conclusion, but also that the evidence *compels* it.'" *Revencu v. Sessions*, 895 F.3d 396, 401 (5th Cir. 2018) (quoting *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006)).

A.

Substantial evidence supports the BIA's conclusion that Luna-Garcia was not entitled to withholding of removal as her own testimony shows that she was never harmed and that her fear of future harm is speculative. "Under 8 U.S.C. § 1231(b)(3)(A), withholding of removal is a mandatory form of relief if an alien's life or freedom would be threatened in the country of removal because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." *Id.* at 402 (quoting *Shaik*, 588 F.3d at 864). Here, Luna-Garcia testified that she was never harmed or threatened in the past. Furthermore, although Luna-Garcia stated that she fears returning to Guatemala for various reasons, the IJ properly determined, and the BIA properly affirmed, that those fears were speculative. Accordingly, the BIA's findings were "substantially reasonable," and the record evidence does not compel a contrary conclusion. *Shaik*, 588 F.3d at 863.

---

[4] The government agrees that we have jurisdiction to review these claims.

No. 15-60526

B.

The BIA's denial of CAT protection was also supported by substantial evidence. Under the CAT, immigration officials "may not remove an alien to a country in which the alien is more likely than not to be tortured." *Morales v. Sessions*, 860 F.3d 812, 817 (5th Cir. 2017). " 'Torture is defined as any act by which severe pain or suffering . . . is intentionally inflicted on a person' . . . with the acquiescence of a public official." *Id.* (quoting *Roy v. Ashcroft*, 389 F.3d 132, 140 (5th Cir. 2004)). The IJ found, and the BIA upheld, that Luna-Garcia failed to show that she would be tortured and that the Guatemalan government would acquiesce in her torture. Luna-Garcia's own testimony showed that the Guatemalan police came and investigated her complaints that someone broke the windows at her brother's home. Therefore, the denial of CAT protection was supported by substantial evidence. *See Shaik*, 588 F.3d at 863.

IV.

Next, we turn to the BIA's the denial of Luna-Garcia's motion to reopen based on allegedly new evidence, which we review for an abuse of discretion. *Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005). "A motion to reopen is a form of procedural relief that 'asks the [BIA] to change its decision in light of newly discovered evidence or a change in circumstances since the hearing.' " *Dada v. Mukasey*, 554 U.S. 1, 12 (2008) (quoting 1 Gordon § 3.05[8][c], at 3-76.32). Under the relevant regulation, "[a] motion to reopen proceedings shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). Luna-Garcia sought to introduce, as additional evidence, the entire transcript of her family members' testimony and an affidavit from Dr. Max Manwaring regarding Guatemala's conditions. The BIA concluded that the trial transcript would not

materially alter the finding that she would not be persecuted or tortured, and that the pertinent information contained in Dr. Manwaring's affidavit was not previously unavailable.  Discerning no error, we hold that the BIA did not abuse its discretion in denying Luna-Garcia's motion to reopen.  *See Zhao*, 404 F.3d at 303.

## V.

For the foregoing reasons, we DENY Luna-Garcia's petitions for review.