UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-60460

_____


Benjamin OJEDA-TERRAZAS,
also known as Benjamin T. Ojeda,
also known as Benjamin Ojeda,

Petitioner,

v.

John ASHCROFT,
United States Attorney General,

Respondent.


_____

Petition for Review of an Order of the
Immigration and Naturalization Service.

_____

May 9, 2002

Before ALDISERT[*], DAVIS, and PARKER, Circuit Judges.

W. Eugene Davis, Circuit Judge:

Petitioner Benjamin Ojeda-Terrazas petitions for review of

an order of the Immigration and Naturalization Service ("INS")

reinstating his prior deportation order under § 241(a)(5) of the

Immigration and Nationality Act ("INA").[1]  Ojeda-Terrazas argues

_____

[*]      Circuit Judge of the Third Circuit, sitting by
designation.

[1]      Immigration and Nationality Act § 241(a)(5), 8 U.S.C. §
1231(a)(5) (2001).  For simplicity, after initial reference to the
United States Code section numbers, this opinion refers to the
provisions at issue as the parties do-by their INA or Illegal
Immigration Reform and Immigrant Responsibility Act of 1996

that § 241(a)(5) does not apply retroactively to aliens who, like Ojeda-Terrazas, illegally reentered the United States before the statute's effective date of April 1, 1997. Ojeda-Terrazas further argues that § 241(a)(5)'s implementing regulations violate his due process rights under the Fifth Amendment. Because we conclude that § 241(a)(5) does not have an impermissible retroactive effect as applied to Ojeda-Terrazas and that the corresponding regulations do not violate any of his due process rights, we deny Ojeda-Terrazas' petition for review and affirm the removal order.

## I.

The facts in this case are not in dispute. Ojeda-Terrazas is a citizen of Mexico. Some time before 1984, Ojeda-Terrazas illegally entered the United States without inspection. On March 8, 1984, Ojeda-Terrazas was deported to Mexico through El Paso, Texas. At that time, Ojeda-Terrazas was informed that if he returned to the United States without permission, he could be subject to criminal prosecution which could result in imprisonment and/or a fine.

Nevertheless, Ojeda-Terrazas illegally reentered the United States sometime in 1991. On May 14, 2001, the INS apprehended Ojeda-Terrazas and served him with a Notice of Intent to reinstate his March 8, 1984, deportation order. Ojeda-Terrazas

("IIRIRA") section numbers.

-2-

then filed this petition for review.

II.

As an initial matter, this court must determine whether it has jurisdiction to review the INS' order reinstating Ojeda-Terrazas' previous deportation order. Both parties in this case agree that INA § 242(a)-(b)[2] grants this court jurisdiction to review the reinstatement order, but not the merits of Ojeda-Terrazas' 1984 order of deportation which has been reinstated.[3] That, of course, does not end our inquiry because this court must satisfy itself that jurisdiction is proper.[4]

Section 242(a)-(b) of the INA grants the courts of appeals subject matter jurisdiction over "final orders of removal."[5] At the same time, INA § 241(a)(5) states, in relevant part, that a "prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed."[6]

Turning to the issue at hand, a reinstatement order is not

---

[2] Immigration and Nationality Act § 242(a)-(b), 8 U.S.C. § 1252(a)-(b) (2001).

[3] Id.

[4] See Howery v. Allstate Ins. Co., 243 F.3d 912, 919 (5th Cir. 2001) ("It is true that subject-matter jurisdiction cannot be created by waiver or consent. It is equally true that federal courts must address jurisdictional questions whenever they are raised and must consider jurisdiction sua sponte if not raised by the parties.").

[5] INA § 242(a)-(b).

[6] INA § 241(a)(5).

literally an "order of removal" because it merely reinstates a previously issued order of removal or deportation. Nevertheless, reinstatement of Ojeda-Terrazas' previous deportation order is a final order of the INS. A fair interpretation of § 242 grants this court the authority to review the lawfulness of the reinstatement order. However, § 241(a)(5) limits that review to the reinstatement order itself; this court cannot "reopen or review" the merits of Ojeda-Terrazas' 1984 deportation order. We conclude, therefore, that this court has jurisdiction to hear Ojeda-Terrazas' petition for review of the reinstatement order.[7]

III.

Ojeda-Terrazas next argues that INA § 241(a)(5) does not apply retroactively to him because he illegally reentered the United States in 1991, before the provision's effective date of April 1, 1997. This argument requires a brief overview and history of reinstatement procedures under the INA.

A.

---

[7]     In reaching this conclusion, we join several other circuits that have resolved this issue in favor of jurisdiction. See Velaszuez-Gabriel v. Crocetti, 263 F.3d 102, 105 (4th Cir. 2001)(noting that the court of appeals "clearly [has] subject matter jurisdiction" to review the lawfulness of the order reinstating petitioner's prior deportation under INA § 242(b)); Bejjani v. INS, 271 F.3d 670, 674 (6th Cir. 2001) (holding that INA § 242(b)granted that court jurisdiction to review the reinstatement order); Alvarez-Portillo v. Ashcroft, 280 F.3d 858, 863-68 (8th Cir. 2002) (considering the merits of alien's challenge to reinstatement of previous removal order); Castro-Cortez v. INS, 239 F.3d 1037, 1043-45 (9 th Cir. 2001) (holding that the court had jurisdiction to review the reinstatement order under INA § 242(a)(1)).

In 1991, when Ojeda-Terrazas illegally reentered the United States, INA § 242(f) provided that, if any alien illegally reentered the United Sates after deportation, "the previous order of deportation shall be deemed to be reinstated from its original date and such alien shall be deported under such previous order at any time subsequent to such reentry."[8]  The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"),[9] which became effective on April 1, 1997, made dramatic changes to immigration law.  Significant to this case, IIRIRA replaced § 242(f) with a new, broader reinstatement provision.  The new reinstatement provision, § 241(a)(5), states:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the

---

[8]     Immigration and Nationality Act § 242(f), 8 U.S.C. § 1252(f) (repealed 1996).

INA § 242(f) provided in full:

Should the Attorney General find that any alien has unlawfully reentered the United States after having previously departed or been deported pursuant to an order of deportation, whether before or after June 27, 1952, on any ground described in any of the paragraphs enumerated in subsection (e) of this section [covering deportation based on various enumerated reasons including  commission of alien smuggling and other criminal offenses], the previous order of deportation shall be deemed to be reinstated from its original date and such alien shall be deported under such previous order at any time subsequent to such reentry.  For the purposes of subsection (e) of this section the date on which the finding is made that such reinstatement is appropriate shall be deemed the date of the final order of deportation.

[9]     Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546 (1996).

prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter and the alien shall be removed under the prior order at any time after reentry.[10]

In enacting § 241(a)(5), Congress' intent was to streamline and expedite existing procedures for removing illegal aliens, which had become "cumbersome and duplicative."[11]

Pursuant to § 241(a)(5), the INS promulgated regulations outlining the procedures for reinstating an alien's prior deportation order.  Under the regulations, the alien is not entitled to a hearing before an immigration judge.[12]  Rather, an INS officer determines (1) the identity of the alien; (2) whether the alien was subject to a prior order of removal; and (3) whether the alien unlawfully reentered the United States.[13]  The alien then has an opportunity to make a statement.[14]  The officer determines whether this statement warrants reconsideration.[15]  An alien who expresses a fear of persecution upon return to the

---

[10]    INA § 241(a)(5).

[11]    H.R. Rep. 104-469(I), 1996 WL 168955 at *107.

[12]    See 8 C.F.R. § 241.8(a).

[13]    See id.  In a disputed case, the INS must verify the identity of the alien by comparing the fingerprints of the alien who was previously deported contained in INS records with those of the alien who is the subject of the reinstatement proceedings.  See 8 C.F.R. § 241.8(a)(2).

[14]    Id. at § 241.8(b).

[15]    Id.

country of removal is referred to an asylum officer.[16]  If that

officer determines his fear is reasonable, the alien may apply

for withholding of removal.[17]

The key differences between the current reinstatement

procedure under § 241(a)(5) and the former procedure under

repealed § 242(f) significant to this appeal are:

1.  Section 241(a)(5) extends the reinstatement procedures to those aliens, like Ojeda-Terrazas, whose initial removals were based upon entry without inspection. Under § 242(f), reinstatement was only available for those aliens whose previous order of deportation was based on one of the enumerated grounds (which did not include lack of inspection).  Therefore, under the old statute, Ojeda-Terrazas would have been entitled to a new deportation procedure rather than being limited to the reinstatement procedure.

2.  Section 241(a)(5) does not allow judicial review of the underlying previous removal order, as discussed above. Section 242(f), however, allowed the alien to attack the merits of a previous removal order.

3.  The regulations implementing § 241(a)(5) allow an immigration officer to determine, following the three-step analysis discussed above, whether reinstatement is proper.  Under § 242(f), an immigration judge made the determination.

B.

We turn next to the question for decision in this case:

whether the current reinstatement procedure under § 241(a)(5)

applies retroactively to Ojeda-Terrazas.  The landmark Supreme

---

[16]    Id. at § 241.8(e).

[17]    Id.

Court case, <u>Landgraf v. USI Film Products</u>,[18] provides the

starting point of our analysis of whether § 241(a)(5) applies

retroactively.  In <u>Landgraf</u>, the Supreme Court set forth a two-

step test to determine whether a federal statute applies

retroactively to conduct occurring before it was enacted.[19]

First, the court must "determine whether Congress has expressly

prescribed the statute's proper reach."[20]  In determining whether

Congress clearly expressed the temporal reach of the statute, the

court is not limited to the statute's express language, but may

also use traditional tools of statutory construction.[21]  If

Congress has clearly expressed whether the statute should apply

retroactively, the inquiry ends.[22]

However, if the statute contains no clear indication of

Congress' intent, the court must then determine whether applying

the new statute to past conduct "would have retroactive

effect."[23]  A statute has an impermissible retroactive effect

when "it would impair rights a party possessed when he acted,

increase a party's liability for past conduct, or impose new

_____

[18]    511 U.S. 244 (1994).

[19]    <u>Id.</u> at 280.

[20]    <u>Id.</u>

[21]    See <u>Lindh v. Murphy</u>, 521 U.S. 320, 325-26 (1997).

[22]    See <u>Landgraf</u>, 511 U.S. at 280.

[23]    <u>Id.</u>

-8-

duties with respect to transactions already completed."[24]  If the court decides that the statute would have an impermissible retroactive effect if applied to past conduct, Landgraf instructs that the statute does not apply retroactively.[25]

### 1.

Proceeding under the Landgraf framework, we must first determine whether Congress has clearly prescribed the temporal reach of § 241(a)(5).  While Ojeda-Terrazas contends that Congress clearly expressed its intent that § 241(a)(5) apply only prospectively, the INS argues that Congress clearly indicated just the opposite--that the statute should apply retroactively.

Ojeda-Terrazas makes several arguments to advance his reading of § 241(a)(5).  First, Ojeda-Terrazas points out that the former reinstatement statute, § 242(f), expressly provided that the reinstatement procedure applied retroactively.[26]  He maintains that the omission of any reference to retroactivity in § 241(a)(5) in contrast to § 242(f), indicates Congress' clear intent that the statute apply only prospectively.  Next, Ojeda-Terrazas argues that Congress' inclusion of express language

---

[24]    Id.

[25]    Id.

[26]    See INA § 242(f) (repealed 1996) (stating that ". . . any alien [who] has unlawfully reentered the United States after having previously departed or been deported pursuant to an order of deportation, whether before or after June 27, 1952," is subject to reinstatement) (emphasis added).

making retroactive other sections of the IIRIRA demonstrates, by negative inference, that Congress intended that § 241(a)(5) not apply retroactively.[27]  Finally, Ojeda-Terrazas asserts that Congress' silence regarding retroactivity is instructive.  He argues that Congress enacted IIRIRA against the backdrop of Landgraf, and therefore, knew to use clear language if it intended § 241(a)(5) to apply retroactively.

On the other hand, the INS presents various arguments in support of its position that § 241(a)(5) applies retroactively. First, the INS points to § 241(a)(5)'s plain language stating that reinstatement applies to any alien who "has reentered the United States illegally."[28]  The INS contends that this use of the past tense clearly contemplates past action.  The INS also invokes Chevron, U.S.A. v. Natural Resources Defense Council,[29] for the proposition that this court must defer to its interpretation of the IIRIRA's retroactive effect, absent congressional intent to the contrary, as long as it is

---

[27]    See IIRIRA § 321 ("the term [aggravated felony] applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph); § 347(c) (exclusion because of unlawful voting applies to any alien who illegally voted "before, on or after the date of enactment of this Act"); § 351(c) (specifying that the section "shall apply to applications for waivers filed before, on, or after the date of the enactment of this Act").

[28]    INA § 241(a)(5) (emphasis added).

[29]    467 U.S. 837, 843 (1984).

reasonable.[30]

Although the Supreme Court has not addressed the precise issue of whether § 241(a)(5) applies retroactively, it did consider whether another IIRIRA provision applied retroactively in INS v. St. Cyr.[31] In St. Cyr, the Court considered the retroactive effect of IIRIRA § 304(b), which replaced former § 212(c).[32] Under § 212(c), the Attorney General had broad discretion to waive deportation orders of resident aliens.[33] The newly-enacted § 304(b), however, excluded aliens convicted of aggravated felonies from the class of aliens to whom the Attorney General could waive deportation.[34] Before the effective date of IIRIRA, St. Cyr, an alien, pled guilty to a criminal charge that made him deportable.[35] Under pre-IIRIRA law, the Attorney

---

[30] The INS also argues that IIRIRA's effective date of April 1, 1997, coupled with the statute's "savings clause," which provides that IIRIRA's new rules do not apply to cases pending at the time of the statute's enactment, see IIRIRA § 309(c)(1)(B), indicates that the pending cases encompassed by the savings clause are the only ones that are exempt from § 241(a)(5). This argument is meritless. The Supreme Court rejected this very argument in INS v. St. Cyr, 533 U.S. 289, 317-18, 121 S.Ct. 2271, 2288-89 (2001) (stating that IIRIRA's savings clause "does not communicate with unmistakable clarity Congress' intention to apply its repeal of § 212(c) [another IIRIRA provision] retroactively"). See also Velasquez-Gabriel, 263 F.3d 102, 106 (4th Cir. 2001).

[31] 533 U.S. 289, 121 S.Ct. 2271 (2001).

[32] Id.

[33] Id. at 295–96.

[34] Id. at 297.

[35] Id. at 293.

General had discretion to waive his deportation, but under new §
304(b), the Attorney General had no authority to grant St. Cyr a
waiver.[36]

The Court held that the statute did not apply
retroactively.[37]  Following Landgraf's two-part test, the Court
first found that Congress' intent regarding the retroactivity of
§ 304(b) was unclear.[38]  The Court stated that Landgraf's first
step is satisfied only where the "statutory language [is] so
clear that it could sustain only one interpretation."[39]  The
Court stated that § 304(b) contained no such clear statement of
Congress' intent to apply the statute retroactively.[40]  The
Court reasoned that neither IIRIRA's effective date nor its
comprehensive nature clearly indicated that Congress intended the
provision to be retroactive.[41]  The Court also explained that
"Congress' willingness, in other sections of IIRIRA, to indicate
unambiguously its intention to apply specific provisions
retroactively" supported its conclusion that the temporal reach

---

[36]    Id.

[37]    Id. at 326.

[38]    Id. at 315-20.

[39]    Id. at 317 (quoting Lindh v. Murphy, 521 U.S. 320, 328
n.4 (1997)).

[40]    Id. at 320.

[41]    Id. at 317-18.

of IIRIRA was unclear.[42] Proceeding then to <u>Landgraf</u>'s second step, discussed more thoroughly below, the Court found that the statute had an impermissible retroactive effect, and therefore, did not apply retroactively to St. Cyr.[43]

Although the Supreme Court has not addressed the issue at hand, other circuits have specifically considered the retroactivity of § 241(a)(5) and have reached different results under the first prong of the <u>Landgraf</u> test. The Sixth and Ninth Circuits have held that § 241(a)(5) does not apply retroactively, finding that the provision clearly indicates Congress' intention not to apply the provision retroactively.[44] In reaching this result, both courts relied primarily on Congress' elimination of the explicit retroactive language contained in § 242(f); the legislative history; and congressional silence on retroactivity of the provision.[45] Based on their findings of a clear congressional statement that § 241(a)(5) does not apply

---

[42]    <u>Id.</u> at 318-19.

[43]    <u>Id.</u> at 325-26.

[44]    <u>See</u> <u>Bejjani v. INS</u>, 271 F.3d 670, 687 (6th Cir. 2001) (decided post-<u>St. Cyr</u>); <u>Castro-Cortez</u>, 239 F.3d 1037, 1053 (9th Cir. 2001) (decided pre-<u>St. Cyr</u>).

[45]    <u>Bejjani</u>, 271 F.3d at 684-87; <u>Castro-Cortez</u>, 239 F.3d at 1050-52.
        However, while the Ninth Circuit credited the negative inference argument arising from Congress' inclusion of express retroactive provisions in other parts of IIRIRA, <u>Castro-Cortez</u>, 239 F.3d at 1051-52, the Fourth Circuit did not, finding that such language was located in other provisions of IIRIRA that addressed completely distinct subject matters. <u>Bejjani</u>, 271 F.3d at 685-86.

-13-

retroactively, these courts did not reach <u>Landgraf</u>'s second step.

The Fourth and Eighth Circuits have reached a different result, however, and have held that Congress' intent on whether § 241(a)(5) applies retroactively is unclear.[46]  Both courts relied on various arguments advanced by the parties in this case to support their finding that congressional intent is ambiguous.[47]  Therefore, these courts proceeded to analyze the retroactivity of § 241(a)(5) under the second prong of the <u>Landgraf</u> test.

In light of the Supreme Court's ruling in <u>St. Cyr</u>, we join the Fourth and Eighth Circuits in holding that Congress did not clearly indicate whether it intended to apply § 241(a)(5) retroactively.  In <u>St. Cyr</u>, the Supreme Court considered many arguments identical to those advanced by the parties in this case and, nevertheless, concluded that it was unclear whether Congress intended the IIRIRA provision at issue in that case to be retroactive.[48]  In particular, the Supreme Court reasoned that Congress' clear statement in other IIRIRA provisions that those provisions applied retroactively, the effective date of the statute, and the inclusion of the saving provision did not make Congress' statement sufficiently clear to satisfy <u>Landgraf</u>'s

_____

[46]    See <u>Velasquez-Gabriel v. Crocetti</u>, 263 F.3d 102, 108 (4th Cir. 2001) (decided post-<u>St. Cyr.</u>); <u>Alvarez-Portillo v. Ashcroft</u>, 280 F.3d 858, 865 (8th Cir. 2002) (decided post-<u>St. Cyr</u>).

[47]    <u>Velasquez-Gabriel</u>, 263 F.3d at 106-08; <u>Alvarez-Portillo</u>, 280 F.3d at 864-65.

[48]    533 U.S. at 317-20.

-14-

first step.[49]

Section 241(a)(5) does differ from the IIRIRA provision at issue in <u>St. Cyr</u> in significant ways, however. First, as Ojeda-Terrazas points out, the predecessor of § 241(a)(5) explicitly stated that it applied retroactively. At the same time, however, as the INS points out, § 241(a)(5) states that an alien who "<u>has reentered</u> the United States illegally after having been removed or having departed voluntarily" is subject to reinstatement of a prior deportation order.[50] Congress could have stated, but did not, that an alien who <u>reenters</u> the United States illegally may have a prior order reinstated under § 241(a)(5). Nevertheless, in <u>St. Cyr</u>, the Supreme Court made clear that "[t]he presumption against retroactive application of ambiguous statutory provisions, buttressed by 'the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien'" must be considered when determining the retroactivity of IIRIRA provisions.[51] For all of these reasons, we are satisfied that the language of § 241(a)(5) is not "so clear that it could sustain only one interpretation."[52]

---

[49]    <u>Id.</u>

[50]    INA § 241(a)(5).

[51]    533 U.S. at 320 (citing <u>INS v. Cardoza-Fonseca</u>, 480 U.S. 421, 449 (1987).

[52]    <u>St. Cyr</u>, 533 U.S. at 317 (quoting <u>Lindh v. Murphy</u>, 521 U.S. 320, 328 n.4 (1997)).

-15-

Therefore, we hold that Congress did not indicate with sufficient clarity whether § 241(a)(5) applies retroactively to satisfy the first step of Landgraf.[53]

2.

Because we conclude that it is unclear whether Congress intended that § 241(a)(5) apply retroactively, we must now determine whether application of the provision to Ojeda-Terrazas has an impermissible retroactive effect.  Under Landgraf's second step, the court must determine whether the statute, if applied retroactively, "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."[54]  If

---

[53]     Another argument that deserves separate attention at this point is the INS' assertion that once this court has decided that the statute is ambiguous as to whether it applies retroactively, it must defer to the INS' interpretation of the statute under Chevron. 467 U.S. 837.  First, the INS has not pointed this court to any official interpretation of § 241(a)(5) which states that that provision applies retroactively.  Assuming there was one, however, St. Cyr forecloses this argument as well.  In St. Cyr, the Court found that Congress had not clearly expressed whether the IIRIRA provision at issue in that case applied retroactively. 533 U.S. at 320.  The INS advanced the same Chevron argument as it does here. Id. at 320 n.45.  The Court rejected this argument, however, and proceeded to analyze the retroactivity of the statute under the second step of the Landgraf test.  Id.  The Court stated that "[b]ecause a statute that is ambiguous with respect to retroactive application is construed under our precedent to be unambiguously prospective, there is, for Chevron purposes, no ambiguity in such a statute for an agency to resolve."  Id. (citation omitted).

[54]     Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994).

-16-

so, the statute does not apply retroactively.[55]

In St. Cyr, discussed above, the Court analyzed the IIRIRA provision at issue under the second prong of the Landgraf test after finding that Congress had not clearly dictated the temporal reach of the IIRIRA provision at issue.[56]  The Court stated that whether a statute has a retroactive effect under Landgraf "should be informed and guided by 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'"[57]  The Court explained that "[p]lea agreements involve a quid pro quo between a criminal defendant and the government."[58]  The Court then reasoned that when St. Cyr entered the plea agreement for his conviction, he was "acutely aware of the immigration consequences of [his] conviction[]."[59]  The Court found that aliens, like St. Cyr, who entered plea agreements with the government before the IIRIRA became effective "almost certainly" relied upon the likelihood of receiving a discretionary waiver of deportation from the Attorney General--a possibility that the new IIRIRA provision eliminated--when deciding to forgo their right

---

[55]    Id.

[56]    533 U.S. at 321-26.

[57]    Id. at 321 (internal citations omitted).

[58]    Id.

[59]    Id. at 322.

to a trial.[60]  For these reasons, the Court held that the newly enacted IIRIRA provision had an impermissible retroactive effect.[61]

In contrast, writing for the Eighth Circuit, Judge Loken held in Alvarez-Portillo[62] that most of § 241(a)(5) had no such retroactive effect.[63]  The court found that § 241(a)(5)'s denial of a hearing before an immigration judge did not have a retroactive effect because "[i]llegal reentrants have no entitlement to such delays and no reasonable expectation that prior inefficiencies in the administration of our immigration laws would continue indefinitely."[64]  Likewise, the court found that § 241(a)(5)'s extension of the reinstatement procedures to illegal reentrants whose prior deportation was based on entry without inspection did not have an impermissible retroactive effect.[65]  Judge Loken wrote that "[n]o illegally reentering alien has a reasonable expectation that his prior deportation order will not be reinstated for purposes of effecting a second

---

[60]  Id. at 325.

[61]  Id.

[62]  Alvarez-Portillo v. Ashcroft, 280 F.3d 858 (8th Cir. 2002).

[63]  Id. at 865-67.

[64]  Id. at 866.

[65]  Id. at 865.

removal."[66]

We agree.  In this case, Ojeda-Terrazas was denied a hearing before an immigration judge, to which he was entitled under pre-IIRIRA law.  Instead, an immigration officer made all of the predicate findings necessary to reinstate his prior deportation order.  Unlike the alien who entered a plea agreement in St. Cyr, however, Ojeda-Terrazas had no reasonable expectation of having a hearing before an immigration judge rather than an INS official when he illegally reentered the United States in 1991.  As Judge Fernandez states in his thoughtful dissent in Castro-Cortez v. INS,[67] § 241(a)(5) "does not deal with any vested rights or settled expectations arising out of the alien's wrongdoing.  Nor does it impose any new duties or new liabilities."[68]  We conclude, therefore, that § 241(a)(5) does not have an impermissible retroactive effect as applied to Ojeda-Terrazas.

---

[66]    Id.  The only portion of the provision that the court found to have an impermissible retroactive effect was § 241(a)(5)'s elimination of the "long-standing INS practice" that an illegal alien could "defend against later deportation or removal by seeking a discretionary adjustment of statutes to lawful permanent resident," where, the alien, as the one involved in that case, married a United States citizen.  Id. at 866-67.  The court held that "[u]nder prior law, Alvarez-Portillo had a reasonable expectation he could either file for a discretionary adjustment of status, or wait and seek the adjustment as a defense to a later deportation proceeding."  Id. at 867.

[67]    239 F.3d 1037, 1053 (9th Cir. 2001) (Fernandez, J., dissenting).

[68]    Id. at 1056.

-19-

Accordingly, we hold that the INS properly applied § 241(a)(5) to Ojeda-Terrazas.

IV.

Finally, Ojeda-Terrazas argues that the INS regulations implementing § 241(a)(5) violate his due process rights because the reinstatement procedure denies him the opportunity to develop a record, have an attorney present, and have an immigration judge decide his case.[69]  In light of our conclusion that § 241(a)(5) applies retroactively to Ojeda-Terrazas, we must now address this issue.

The Fifth Amendment guarantees aliens due process of law in deportation hearings.[70]  However, to succeed on a collateral attack of a deportation order on due process grounds, an alien must first demonstrate that he has suffered actual prejudice.[71]  In this case, Ojeda-Terrazas has conceded his identity, that he was subject to a prior deportation order, and that he illegally reentered the United States.  In so doing, Ojeda-Terrazas has conceded that all the predicate findings that the immigration officer made to reinstate Ojeda-Terrazas' 1984 deportation order were true.  Ojeda-Terrazas does not assert that, if given the

---

[69]  See 8 C.F.R. § 241.8.

[70]  See Reno v. Flores, 507 U.S. 292, 306 (1993).

[71]  See United States v. Encarnacion-Galvez, 964 F.2d 402, 407 (5th Cir. 1992); Anwar v. INS, 116 F.3d 140, 144 (5th Cir. 1997) ("Due process challenges to deportation proceedings require an initial showing of substantial prejudice.").

procedural safeguards he seeks, the result in this case would be any different.[72]  Therefore, we hold that Ojeda-Terrazas has not alleged that he suffered any actual prejudice as a result of the new reinstatement procedures, and therefore, we do not reach the merits of Ojeda-Terrazas' due process claim.

V.

In conclusion, we hold that INA § 242(a)-(b) grants this court jurisdiction to hear Ojeda-Terrazas' petition for review of the reinstatement order.  We also hold that INA § 241(a)(5) applies retroactively to Ojeda-Terrazas.  Although, under Landgraf, the language of § 241(a)(5) does not clearly indicate whether Congress intended the provision to apply retroactively, there is no impermissible retroactive effect in this case.  Finally, because we decide that Ojeda-Terrazas has not alleged actual prejudice resulting from the application of § 241(a)(5) to him, we do not further consider the merits of his due process claim.  Ojeda-Terrazas' petition for review is, therefore, denied.

PETITION DENIED.

---

[72]    Furthermore, Ojeda-Terrazas has not alleged that he fears persecution upon his return to Mexico.