# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-60420
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

January 24, 2014

Lyle W. Cayce
Clerk

JOSE APOLINAR MARTINEZ, Also Known As M. Jose Apolinar,
Also Known as Apoinar Garcia Martinez,
Also Known as Jose Apolinar Martin Garcia,
Also Known as Apolinar Garcia Martinez,

Petitioner,

versus

JEH JOHNSON, Secretary, Department of Homeland Security,

Respondent.

Petition for Review of an Order of
the Board of Immigration Appeals

Before JOLLY, SMITH, and CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Jose Martinez challenges the reinstatement of an order of removal by Immigration and Customs Enforcement ("ICE"). He contends that the original order of deportation must be rescinded as unconstitutional and, alternatively,

No. 13-60420

that it cannot be reinstated because he legally reentered the United States. Because we do not have jurisdiction to review the first issue, and because the second is meritless, we deny the petition for review.

I.

Martinez, a citizen of Mexico, first entered the United States by unknown method in 1983. In 1990, he was convicted of possession of a weapon, and in early 1993 he was convicted of burglary and sentenced to five years' imprisonment. In 1993, the former Immigration and Naturalization Service ("INS") took Martinez into custody and issued an order to show cause and notice of hearing. That order, written in English and Spanish, was personally served on Martinez, who signed it and a request for a prompt hearing and waiver of his right to a fourteen-day minimum notice period. The order, however, was not read to Martinez in Spanish, and no translator was provided.

Two days later, an immigration judge ("IJ") took Martinez's pleadings during a deportation hearing. The IJ annotated the order to show cause and notice of hearing to reflect the pleadings at the hearing, dating and initialing the bottom of the page. The IJ found Martinez deportable, noting that the "Respondent has made no application for relief from deportation." The INS issued a warrant of deportation, and Martinez was deported three days later.

In 1997, Martinez reentered by crossing a river and applied for a new immigration card from the INS without disclosing his previous deportation. The INS issued him a card under the name "Jose A Martinez" and a new alien registration number. In 2000, however, INS officials recognized Martinez as having been previously deported and apprehended him as he reentered the United States in a bus. Although he told officials that, because he had been issued a new card, he did not know that his reentry was in violation of his

2

No. 13-60420

deportation order, his removal order was reinstated, and he was deported in 2002. He did not contest that action either before or after his deportation.

That same year, Martinez again reentered. In May 2013, ICE detained him and reinstated the 1993 deportation order. Martinez refused to sign the document and declined making a statement contesting the reinstatement determination but, in June, filed a protest of the reinstatement order and this petition. He challenges (1) the original 1993 order of deportation as violative of his due-process rights and (2) the present reinstatement order as improper because of his legal reentry after deportation.

## II.

In addressing Martinez's challenge to the original order, we must first decide whether this court has jurisdiction to entertain the petition in this regard. Congress has specifically eliminated this court's jurisdiction to reopen or review original orders of removal in the reinstatement of removal orders against aliens illegally reentering the United States. *See* 8 U.S.C. § 1231(a)(5). But Congress did not preclude the review of constitutional claims or questions of law raised in a petition for review. *See* 8 U.S.C. § 1252(a)(2)(D). Any collateral attack on an underlying order of removal, including constitutional or legal questions, however, may be considered only if the alien demonstrates that administrative remedies have been exhausted or the initial removal proceedings constituted a gross miscarriage of justice. *See Ramirez-Molina v. Ziglar*, 436 F.3d 508, 514 (5th Cir. 2006).

Although the record does not indicate that the hearing regarding the 1993 order of deportation took place *in absentia* and Martinez was in custody during the entirety of the time at issue, Martinez claims that he did not receive

3

No. 13-60420

notice via certified mail as required in the order to show cause[1]; therefore, he was never afforded the opportunity to participate in the deportation hearing. This, he claims, constituted a violation of his due-process rights and a gross miscarriage of justice. Though this court has announced no precise standard for what constitutes a gross miscarriage of justice, we have held that there is no gross miscarriage where the petitioner failed to contest his removability in prior proceedings. *See Ramirez-Molina*, 436 F.3d at 514–15.[2]

Martinez did not contest deportation at any time when initially deported in 1993 and again failed to do so when his 1993 deportation order was reinstated in 2002. Additionally, he repeatedly engaged in self-help by illegally reentering in violation of his deportation on numerous occasions. That is enough to foreclose the possibility that the initial removal proceedings could constitute a gross miscarriage of justice, so we do not have jurisdiction to hear Martinez's due-process challenge.

III.

Martinez challenges the legality of the INS's present reinstatement of the 1993 removal order, claiming that he legally reentered after his deportation, as witnessed by his receiving a new immigration card; as a result, his previous deportation order cannot be reinstated.[3] We can decide this claim

---

[1] "TO BE CALENDARED AND NOTICE PROVIDED BY THE OFFICE OF THE IMMIGRATION JUDGE. NOTICE WILL BE MAILED TO THE ADDRESS PROVIDED BY THE RESPONDENT."

[2] *See also United States ex rel. Steffner v. Carmichael*, 183 F.2d 19, 20–21 (5th Cir. 1950) ("[Petitioner] did not elect to test the validity of his 1936 deportation order. He had his day before the immigration authorities, who decided that he should be deported. There is no showing that his failure to test the validity of his order was due to any cause other than his desire not to do so.").

[3] "If the Attorney General finds that an alien has reentered the United States *illegally* after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened

No. 13-60420

under 8 U.S.C. § 1252, which provides us jurisdiction to review "orders of removal."[4]

We addressed this issue in *Anderson*, 611 F.3d at 276–77. In that case, a Nigerian immigrant was deported after being convicted of two crimes. *Id.* She reentered the United States years later under her new married name, and an immigration official stamped her passport as she entered. *Id.* After determining its mistake, the government reinstated the earlier removal order and sought to have her deported. *Id.* We held that the passport stamp did not suggest that the alien had lawfully reentered the country and that because she did not first receive permission from the Attorney General to apply for readmission as required by statute,[5] she had illegally reentered, and the INS had properly reinstated her removal order. *Id.*

Here, as in *Anderson*, Martinez did not receive permission from the Attorney General to reapply for readmission. Instead, he illegally crossed the border and then applied at the INS for a new immigration card, under a

---

or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after reentry." 8 U.S.C. § 1231(a)(5) (emphasis added); *see also* 8 C.F.R. § 241.8(a) ("In establishing whether an alien is subject to this section, the immigration officer shall determine the following: (1) Whether the alien has been subject to a prior order of removal. . . . (2) The identity of the alien . . . . (3) Whether the alien *unlawfully* reentered the United States. . . ." (emphasis added)).

[4] We have analogized "removal orders" to "reinstatement orders" in the jurisdictional context. *See Anderson v. Napolitano*, 611 F.3d 275, 277–78 (5th Cir. 2010). In *Anderson*, we did not directly address the effect of 8 U.S.C. § 1252(a)(2)(C) on our jurisdiction to review reinstatement orders where the underlying removal order involves an aggravated felon or other criminal alien covered by the statute. It seems unlikely that Congress intended to strip our jurisdiction regarding the underlying removal order involving criminal aliens but not the orders reinstating their removal, especially in light of the fact that we have jurisdiction under 8 U.S.C. § 1252 only because of analogizing reinstatement orders with removal orders. We are, however, bound by our precedent in this matter.

[5] 8 U.S.C. § 1182(a)(9)(A)(iii) ("Clauses (i) and (ii) shall not apply to an alien seeking admission within a period if, prior to the date of the alien's reembarkation at a place outside the United States or attempt to be admitted from foreign contiguous territory, *the Attorney General has consented to the alien's reapplying for admission*." (emphasis added)).

5

different identity and number, and without divulging that he previously had been deported. Successfully deceiving immigration officials into providing one with a new immigration card does not constitute either permission to reenter from the Attorney General or legal reentry. Therefore, Martinez's challenge to the reinstate order is without merit.

Because Martinez does not present any meritorious challenges over which we have jurisdiction, the petition for review is DENIED.