# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————

13-60025

————

United States Court of Appeals
Fifth Circuit

**FILED**

April 1, 2014

Lyle W. Cayce
Clerk

JOSE SOCORRO AVALOS-MARTINEZ,

Petitioner

v.

JEH CHARLES JOHNSON, SECRETARY, DEPARTMENT OF
HOMELAND SECURITY,

Respondent

————

Petition for Review of an Order of the
Department of Homeland Security
DHS No. A041 936 177

————

Before STEWART, Chief Judge, and GARZA and SOUTHWICK, Circuit
Judges.

PER CURIAM:*

Jose Socorro Avalos-Martinez ("Avalos") petitions for review of a
Department of Homeland Security order reinstating a prior removal order
against him pursuant to 8 U.S.C. § 1231(a)(5).  Avalos contends reinstatement
is improper because he reentered the United States using a lawful permanent
resident card, making his reentry legal.  The petition for review is DENIED.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 13-60025

## FACTUAL & PROCEDURAL BACKGROUND

Avalos, a citizen and native of Mexico, entered the United States as a conditional resident on February 10, 1988. He successfully petitioned for an adjustment of status, becoming a lawful permanent resident ("LPR") on June 4, 1990. Avalos was convicted of driving while intoxicated in 1990, again in 1991, and again in 2000. His third conviction was an aggravated felony. On September 28, 2000, the former Immigration and Naturalization Services charged Avalos with being removable as an alien with an aggravated felony conviction. Avalos conceded that he was removable, did not seek relief from removal, and was ordered removed by an immigration judge on October 18, 2000. He was removed to Mexico and warned that, due to his removal as an aggravated felon, he was prohibited from entering the United States unless he received permission from the Attorney General. *See* 8 U.S.C. § 1182(a)(9)(A) (requiring the Attorney General's consent for readmission for aliens previously removed for aggravated felonies).

Avalos contends he had filed an application to renew his LPR card before he was placed in immigration custody. After his removal, the new card was mailed to his residence in the United States where his family was still residing. Members of Avalos's family visited him in Mexico after his removal and delivered his new LPR card. In January 2001, Avalos presented himself before immigration officials at the Eagle Pass, Texas port of entry. Avalos contends that he showed his LPR card, was questioned about his prior convictions and deportation, then allowed entry. In 2012, Avalos's wife filed an I-130 petition for him with the United States Customs and Immigration Service ("USCIS"). That petition apparently caused Avalos's name to be searched on immigration databases, leading to the discovery that he had previously been deported.

2

No. 13-60025

Avalos was arrested near his San Antonio home on December 11, 2012, on the basis that he had illegally reentered the United States after being deported.

Thereafter, his October 18, 2000, order of removal was reinstated. Avalos contested reinstatement and argued his reentry was not illegal because he was admitted after presenting his LPR card and explaining his immigration and criminal history to an immigration official. Avalos filed a timely petition for review of DHS's reinstatement order.

## DISCUSSION

We generally lack jurisdiction to review any final order of removal issued on the basis of an alien's conviction of an aggravated felony. *See Ramirez-Molina v. Ziglar*, 436 F.3d 508, 513 (5th Cir. 2006); *see also* 8 U.S.C. § 1252(a)(2)(C). The INA likewise limits appellate review of a reinstatement order entered after an alien reenters the United States in violation of a removal order. *See* 8 U.S.C. § 1231(a)(5). Nevertheless, we retain jurisdiction over cases in which the petitioner raises a constitutional or legal issue. 8 U.S.C. § 1252(a)(2)(D). Avalos' contention that he did not reenter the United States illegally raises a legal issue that preserves this court's jurisdiction. *See Anderson v. Napolitano*, 611 F.3d 275, 277-78 (5th Cir. 2010).

Section 1231(a)(5) gives the Attorney General the authority to reinstate a prior removal order against an alien who has illegally reentered. 8 U.S.C. § 1231(a)(5). The implementing regulation requires an immigration officer to make three findings in order to reinstate a prior removal order: the identity of the individual, that the alien is subject to a prior order of removal, and that the alien illegally reentered the United States. 8 C.F.R. § 241.8(a); *see also Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 296 (5th Cir. 2002). Where an alien challenges the sufficiency of the administrative record supporting reinstatement of a removal order, "the administrative findings of fact are

3

conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . [and] a decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law." *Anderson*, 611 F.3d at 278.

Avalos challenges only the third finding necessary for reinstatement. He argues that the administrative record is deficient because it does not establish how the immigration officer reached the conclusion Avalos entered illegally. Avalos alleges that his entry actually was legal because he presented himself at a port of entry, fully disclosed his immigration history, and was permitted entry through use of his unexpired LPR card. The Government contends that no objective evidence exists in the record to support Avalos's claim that the events unfolded as he contends, and that accordingly we are bound by the administrative finding. "Under the 'scope and standard of review' dictated by 8 U.S.C. § 1252(b)(4)(B), we are bound to hold [administrative findings] 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* at 279 (citations omitted).

In one of our precedents, the alien alleged that an "admitted" stamp in her passport indicated that her reentry into the United States was lawful. *Anderson*, 611 F.3d at 277. The only evidence in the record was that the administrative official had reviewed the evidence and concluded Anderson was subject to the reinstatement order. *Id.* Anderson argued the administrative record was insufficient and offered her passport stamp as evidence indicating she had entered lawfully. *Id.* The court rejected this argument and concluded that "[w]hile nothing in the administrative record supports the Department's finding," in the absence of "any other evidence demonstrating that the Department's finding of fact was inaccurate, we are compelled to deny the petition." *Id.* at 279.

As in *Anderson*, the immigration official here found that each condition required for reinstatement of removal applied to Avalos. "[W]e are bound to hold this finding 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* Avalos has offered only his assertions that he was permitted entry after presenting his LPR card and disclosing his immigration history. The assertions were in an affidavit stating his version of events surrounding the reentry. He produced no other evidence regarding the factual claims. "Without some affirmative evidence undermining [the immigration officer's] finding, our hands are tied." *Id.* Like the petitioner in *Anderson*, Avalos has failed to present evidence overcoming the Department's finding regarding his illegal reentry. The absence of evidence, alone, is sufficient to compel denial of Avalos's petition for review.

Our holding in *Anderson* also suggests that even if we did accept Avalos's allegations regarding the events at the time of his entry as true, the fact that he was allowed entry after presentation of his LPR card does not mean his reentry was legal for the purposes of Section 1231(a)(5). *Id.* at 278-79. An alien who, like Avalos, has been removed based on an aggravated felony conviction is inadmissible at any time unless the Attorney General has consented to the alien's reapplying for admission. 8 U.S.C. § 1182(a)(9)(A)(i), (iii). In *Anderson*, we concluded that Anderson's passport stamp did not suggest she lawfully reentered. 611 F.3d at 279. As with the passport stamp, Avalos's presentation of an LPR card at entry "simply indicates [he] was admitted through an immigration checkpoint, [and] is not evidence that the Attorney General consented to [Avalos] applying for readmission." *Id.* at 278.

In another recent case, this court denied review of a reinstatement order where the petitioner argued the legality of his reentry on the basis he had been provided, after reentry, a new immigration card by using a different identity and number and without divulging he had previously been deported. *Martinez*

*v. Johnson*, 740 F.3d 1040 (5th Cir. 2014). There, Martinez argued he legally reentered, as witnessed by receiving a new immigration card. *Id.* at 1043. Relying on *Anderson*, the court concluded Martinez had not received permission from the Attorney General to reapply for readmission and that "deceiving immigration officials into providing a new immigration card did not constitute either permission to reenter from the Attorney General or legal reentry." *Id.*

We find unpersuasive Avalos's argument that *Anderson* is not controlling, and find additional support in our recent holding in *Martinez*. Moreover, Avalos's lawful permanent resident status terminated upon his removal in 2000. *See* 8 C.F.R. § 1.2. As a result, Avalos entered with an LPR card that did not carry with it the underlying right to enter, even if as he claims, it appeared to be a facially valid document.

We briefly address Avalos's argument for the legality of his entry premised on *Matter of Quilantan*, 25 I. & N. Dec. 285 (BIA 2010). The BIA concluded in that ruling that when aliens present themselves at a port of entry, make no false claim to citizenship, and the entries are procedurally regular, then they have been lawfully admitted to the United States for the purposes of application for an adjustment of status. 25 I. & N. Dec. at 290-91. Avalos argues it follows that a procedurally regular entry is not an illegal reentry for the purposes of Section 1231(a)(5). The BIA's holding in *Quilantan* was premised on the definition of "admitted" in 8 U.S.C. § 1101(a)(13)(A) as "the lawful entry of the alien . . . after inspection" and dealt only with whether an alien had to show substantive lawfulness in order to prove he had been "admitted" for adjustment of status. 25 I. & N. Dec. at 287. Section 1231(a)(5), governing *re*entry, does not use the term "admitted" but rather hinges eligibility for reinstatement on illegal reentry. Another circuit, when presented with the question of the applicability of *Quilantan* to the lawfulness

of reentry, held that "[t]he BIA's reasoning in *Quilantan* [was] simply inapposite to the construction of the phrase 'reentered the United States illegally' in § 1231(a)(5)." *Cordova-Soto v. Holder*, 659 F.3d 1029, 1034 (10th Cir. 2011). We agree. The procedural regularity of a previously removed alien's reentry into the United States does not establish the legality of such entry under Section 1231(a)(5).

We also find no merit in Avalos's argument that his due process rights were violated because DHS did not investigate how he reentered. The petition for review is DENIED.