### IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

No. 17-60522

United States Court of Appeals
Fifth Circuit

**FILED**
May 16, 2019

Lyle W. Cayce
Clerk

RAUL TERRAZAS-HERNANDEZ,

> Petitioner

v.

WILLIAM P. BARR, U. S. ATTORNEY GENERAL,

> Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before BARKSDALE, SOUTHWICK, and HAYNES, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Raul Terrazas-Hernandez claims the Department of Homeland Security's reinstatement in August 2012, pursuant to 8 U.S.C. § 1231(a)(5), of his prior (October 1993) removal order is an impermissibly retroactive application of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), amending the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq*. IIRIRA is not impermissibly retroactive as applied to Terrazas. In addition, his claim his entry was lawful because he was allegedly waved through by officials at a border checkpoint is foreclosed by our precedent. DENIED.

No. 17-60522

I.

Terrazas is a Mexican citizen. In general, the parties dispute when, and at what ages, Terrazas entered the United States illegally. It appears he did so approximately four times between 1985 and 1994, usually by falsely claiming American citizenship. (Because Terrazas has given conflicting testimony over the years regarding his various entries, the exact number is unclear.)

In any event, prior to 1985, Terrazas' father, on a date not found in the record, filed an I-130 visa petition on his son's behalf. It was approved in 1984.

Based on that approval, Terrazas presented himself at the United States consulate in Juarez, Mexico, in May 1992, seeking a visa to enter as the son of a lawful permanent resident (LPR). But, his misdemeanor marihuana conviction in June 1988 and arrest record apparently required the denial of his visa.

Terrazas was arrested in Texas in 1993 and convicted of driving with a suspended license. Following that conviction, he was discovered by immigration officials during a jail check in Midland, Texas, and turned over to Border Patrol custody in April 1993. While in custody, he admitted to Border Patrol that he had entered the United States illegally with his girlfriend; and, because he had no documentation supporting his lawful presence in the United States, the Immigration and Naturalization Service (INS) initiated deportation proceedings.

Terrazas was ordered deported in October 1993 by an immigration judge (IJ). Although the IJ denied voluntary departure, concluding it would be "a fruitless effort", Terrazas nevertheless voluntarily removed on the day he was ordered to be deported. He asserts he reentered the United States two days later.

2

No. 17-60522

And, through counsel, he appealed the IJ's decision to the Board of Immigration Appeals (BIA), seeking suspension of deportation. The BIA denied his appeal and affirmed the deportation order because Terrazas had voluntarily removed in July 1989 "under threat of deportation", thereby "br[eaking] the continuity of [his] physical presence in the United States" and rendering him statutorily ineligible for suspension of deportation. He was removed following the Board's decision in 1994, but illegally reentered that year.

Beginning in 1995, Terrazas filed for adjustment of status (adjustment-application), Form I-485, three times. In its Notice of Decision letter denying his second adjustment-application in 2011, the Department of Homeland Security (DHS) warned Terrazas that his 1993 removal order was subject to reinstatement. DHS reinstated the prior deportation order on 25 August 2012.

Nevertheless, Terrazas apparently expressed fear of being returned to Mexico, and, as a result, in June 2017 was granted a reasonable-fear interview with an asylum officer to evaluate whether he was entitled to discretionary withholding of removal. (But, when arrested in 2012—after the 1993 order was reinstated—at his home in Midland, Texas, by Immigration and Customs Enforcement (ICE) officers, the ICE officer noted in his summary of the arrest that Terrazas had stated he "[did] not fear harm or persecution if . . . returned to Mexico". In any event, as noted, in June 2017 he was granted the reasonable-fear interview.)

In June 2017, the asylum officer found Terrazas credible, but concluded he did not establish a reasonable fear of persecution or torture if returned to Mexico. Terrazas requested review of the officer's determination by an IJ.

Terrazas appeared before the IJ that June. (His counsel was not present, but the IJ commented that counsel "sent his significant other to kind of take notes on his behalf with the [c]ourt's permission".) The IJ affirmed the asylum

No. 17-60522

officer's reasonable-fear determination, explaining that he otherwise did not "have the legal authority to terminate the case against [Terrazas]". Terrazas was removed from the United States in July 2017.

II.

An order reinstating a prior removal is not subject to review by the BIA; therefore, as stated in 8 U.S.C. § 1231(a)(5), Terrazas could not seek review of the reinstatement order. That section provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under [the Immigration and Nationality Act], and the alien shall be removed under the prior order at any time after the reentry.

*Id.*

Instead, Terrazas challenges the lawfulness of reinstating the BIA's initial removal order, making this a petition for a review of an order of the BIA. And, for a petition for review of the reinstatement of a final removal order, our court has jurisdiction pursuant to 8 U.S.C. § 1252(a). *Ponce-Osorio v. Johnson*, 824 F.3d 502, 504 (5th Cir. 2016) (citing *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 295 (5th Cir. 2002)).

First, we evaluate whether IIRIRA is impermissibly retroactive as applied to Terrazas. We hold it is not, because no adjustment-application was pending at the time of the reinstatement order, and his previous adjustment-application was denied due to his failure to prosecute. Next, we determine whether Terrazas' entry was lawful because he was allegedly waved through at an entry checkpoint. His contention is foreclosed by our precedent.

At oral argument, Terrazas' counsel attempted to claim the original 1993 removal was improper. In the alternative, counsel claimed: Terrazas had an

approved I-130 application in 1984; but, he was prevented from raising his entitlement to adjustment because the visa "wasn't available yet". Oral Argument 6:27–:37; 7:27–29; 8:59–9:06; 9:40–56. The propriety of the original 1993 deportation order, however, was not raised in Terrazas' brief here. Therefore, that issue will not be decided because "we do not consider an issue first raised at oral argument" to our court. *Arsement v. Spinnaker Expl. Co.*, 400 F.3d 238, 247 (5th Cir. 2005).

## A.

Terrazas contends: IIRIRA is impermissibly retroactive because, under the previous statutory scheme, he would have been granted a second removal proceeding with an IJ before being removed, rather than DHS' simply reinstating the prior removal order in August 2012, pursuant to § 1231(a)(5).

In 1995, while unlawfully present in the United States, Terrazas filed his first adjustment-application, contending his marriage to a United States citizen made him eligible for adjustment to resident status. The INS, in August 2001, denied the adjustment-application for failure to prosecute. Terrazas and his alleged wife were twice requested to appear before an IJ to demonstrate eligibility for adjustment of status, but they failed to appear. Terrazas claims this adjustment-application was pending before IIRIRA's 1 April 1997 effective date, rendering the statute impermissibly retroactive as applied to him.

"Review of final reinstatement orders is extremely limited", and encompasses only "the lawfulness", "but, in general, not the merits[,] of the underlying order of removal". *Ponce-Osorio*, 824 F.3d at 504 (citing *Ojeda-Terrazas*, 290 F.3d at 295). "Whether the reinstatement provision of IIRIRA may be applied retroactively . . . is an issue of law that this court reviews *de novo*." *Silva Rosa v. Gonzales*, 490 F.3d 403, 406 (5th Cir. 2007) (citing *Requena-Rodriguez v. Pasquarell*, 190 F.3d 299, 302 (5th Cir. 1999)). We reject

the Government's invitation to defer to the agency's interpretation of retroactivity, "[b]ecause . . . for *Chevron* purposes, [there is] no ambiguity . . . for an agency to resolve", *I.N.S. v. St. Cyr*, 533 U.S. 289, 320 n.45 (2001).

"Congress has the power to enact laws with retrospective effect." *Id.* at 316 (citation omitted). In that regard, the Supreme Court has recognized a "presumption against retroactive legislation", *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994), advising courts to read statutes "as prospective in application unless Congress has unambiguously instructed retroactivity", *Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (citing *Landgraf*, 511 U.S. at 263). In *Landgraf*, the Court provided a two-part test for evaluating whether a federal statute applies retroactively.

First, reviewing courts must "determine whether Congress has expressly prescribed the statute's proper reach". *Landgraf*, 511 U.S. at 280. If Congressional intent of retroactivity is clear, the inquiry ends. *Id.* If not, courts proceed to step two and determine whether retroactive application "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed". *Id.*

Regarding *Landgraf*'s step one, the Court in 2006 held Congress' intent regarding the retroactivity of IIRIRA § 241(a)(5), 8 U.S.C. § 1231(a)(5), to be unclear, *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 38–42 (2006); as had our court in 2002 in *Ojeda-Terrazas*, 290 F.3d at 300. At issue, then, is *Landgraf*'s step two: whether retroactive application of the statute would have an impermissible effect as applied to Terrazas.

With the enactment of IIRIRA's § 241(a)(5), 8 U.S.C. § 1231(a)(5), Congress "streamline[d]" removal procedures, *Ojeda-Terrazas*, 290 F.3d at 296, and allowed for reinstatement of prior orders of removal, "not subject to being reopened or reviewed", but rather, if reinstated, removal is automatic, 8

U.S.C. § 1231(a)(5); *see also* 8 C.F.R. § 241.8(a) ("The alien has no right to a hearing before an [IJ]".). The enactment of IIRIRA extended reinstatement procedures to aliens previously removed for illegal entry, such as Terrazas, *Ojeda-Terrazas*, 290 F.3d at 295–96, whereas, pre-IIRIRA, this group of aliens would have been entitled to new removal proceedings before an IJ, *id.* Terrazas claims this difference satisfies the second step of *Landgraf* by impermissibly "attach[ing] a new disability, in respect to transactions or considerations already past". *Vartelas*, 566 U.S. at 266 (internal quotation marks and citation omitted).

As noted, our court in 2002 in *Ojeda-Terrazas*, 290 F.3d at 301–02, rejected a retroactivity challenge to § 1231(a)(5). There, our court held the statutory provision did not have an impermissible effect where the alien "had no reasonable expectation of having a hearing before an [IJ]" under the former statutory scheme, and thus could not show any prejudice from the application of § 1231(a)(5). *Id.*

Subsequently, in *Fernandez-Vargas* in 2006, the Supreme Court held § 1231(a)(5) "applies to those who entered before IIRIRA", 548 U.S. at 33, and was not impermissibly retroactive where the alien had reentered illegally before IIRIRA's effective date, married a United States citizen after that date, but failed to apply for relief from removal prior to IIRIRA's effective date (despite having every opportunity to do so), *id.* at 45–46. The Court, however, reserved deciding whether the statute would have an impermissible effect where the alien had both married a United States citizen and applied for adjustment of status before IIRIRA's effective date. *Id.* at 36 & nn.5 & 12.

Terrazas asserts his challenge falls within this narrow factual scenario reserved by the Court. As explained *infra*, it does not.

In the light of *Fernandez-Vargas*, our court reevaluated, in *Silva Rosa*, 490 F.3d at 405–07, the retroactivity of § 1231(a)(5) within that alleged factual

framework. There, the alien had married a LPR and filed a visa petition that had been *approved before* the effective date of IIRIRA, and asserted the reinstatement of his removal was impermissibly retroactive. *Id.* at 405. Our court disagreed, holding that, because his visa was not immediately available, his "rights to an adjustment of status could not vest before IIRIRA's effective date". *Id.* at 408.

We hold the statute may be applied retroactively to Terrazas because such an application is not impermissible. Terrazas' 1995 adjustment-application was not pending at time of the reinstatement order in 2012, because, as discussed, it had been denied in 2001—11 years before the reinstatement of the removal order. Regardless of whether the application was before IIRIRA's 1 April 1997 effective date, it had been rejected long before reinstatement proceedings began. What's more, the denial of the application in 2001 was due solely to Terrazas' failure to prosecute, not any operation of IIRIRA.

Under either version of the law (pre- or post-effective date), Terrazas was required to appear before the IJ when requested to support his adjustment-application—he twice chose not to do so. *See Matter of Pearson*, 13 I. & N. Dec. 152 (BIA 1969) (concluding failure to prosecute is a valid ground for denial pre-IIRIRA). The root cause of Terrazas' claimed "injury" is not the enactment of IIRIRA, but rather his failure to appear before the IJ to seek adjustment of status.

Further, the necessary facts supporting Terrazas' alleged marriage (the grounds for his 1995 adjustment-application) are not found in the administrative record. We are, of course, not permitted to look outside it. 8 U.S.C. § 1252(b)(4)(A) (stating "court[s] of appeals shall decide the petition only on the administrative record"). The record citation in Terrazas' brief to the immigration official's Form I-213 summary of his communication with

Terrazas purporting to support his marriage-claim states he entered the country "with a *girlfriend*, SALINAS, Lilly", not a wife who is an American citizen or LPR.  (Emphasis added.)

When asked at oral argument about any evidence in the record supporting his marital status or his alleged wife's citizenship-status, Terrazas' counsel responded "there is something in the record that [Terrazas] has the approved I-130" petition from 1984.  Oral Argument 9:50–52.  That answer is entirely inapposite:  as discussed *supra*, the 1984 I-130 approval was based on a petition filed by his *father* on Terrazas' behalf; it has no relation to his marital status or the citizenship-status of his alleged wife.

After filing the 1995 adjustment-application, it was Terrazas' obligation to appear before the IJ and supply the requisite information to support finding he was married to a United States citizen and qualified for adjustment of status.  He did not do so.

### B.

As discussed *supra*, at the 1993 removal proceeding:  the IJ determined Terrazas was ineligible for suspension of removal based, in part, on his criminal history; and, given Terrazas' history of illegal entries, the IJ concluded allowing voluntary self-removal would be a "fruitless effort".  Nonetheless, following the IJ's decision, Terrazas apparently self-removed in October 1993, because, as stated in the DHS 2012 Notice of Decision letter again denying adjustment of status, there is "no indication in Service records that the removal order against [him] ha[d] been executed".

In a sworn statement at an interview with an immigration officer in 2012, Terrazas said he returned to the United States two days later, "on October 24, 1993", as a passenger in a vehicle driven by his alleged wife.  He claims to have entered the United States legally because he crossed at the

No. 17-60522

Bridge of the Americas Port of Entry in El Paso, Texas, where he was allegedly waved through—without any questions—by border officials.

Review of reinstatement orders must be consistent with the "scope and standards" provided in 8 U.S.C. § 1252(b)(4). *Anderson v. Napolitano*, 611 F.3d 275, 277–78 (5th Cir. 2010) (citations omitted). Along that line, when an alien challenges the sufficiency of the administrative record supporting reinstatement of a removal order, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . [and] a decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law". *Id.* at 278 (quoting 8 U.S.C. § 1252(b)(4)).

The Attorney General is authorized by 8 U.S.C. § 1231(a)(5) to reinstate a prior removal order against an alien who has reentered illegally. The implementing regulation requires an immigration officer make three predicate findings to reinstate a prior removal order: (1) the identity of the individual, (2) the alien's being subject to a prior order of removal, and (3) the alien's having "unlawfully reentered" the United States. 8 C.F.R. § 241.8(a); *see also Ojeda-Terrazas*, 290 F.3d at 296. In that regard, an "alien[] previously removed" is "ineligible for . . . admission" unless "the Attorney General has consented to the alien's reapplying for admission". 8 U.S.C. § 1182(a)(9)(A)(iii).

Terrazas cannot show his reentry into the United States was lawful, and, therefore, his legal-reentry claim fails, because the dispositive factor in determining whether a reentry was lawful is whether the alien received permission from the Attorney General to reapply for admission to the United States. *See* 8 U.S.C. § 1182(a)(9)(A)(iii); *Martinez v. Johnson*, 740 F.3d 1040, 1043 & n.5 (5th Cir. 2014); *Anderson*, 611 F.3d at 277. The record does not show Terrazas received the requisite approval. In that regard, Terrazas'

10

counsel conceded at oral argument that Terrazas did not have such permission to reenter.  Oral Argument 5:05–:07.

Terrazas' challenge is also foreclosed by both *Anderson*, 611 F.3d at 278, and *Martinez*, 740 F.3d at 1043, where each petitioner challenged the reinstatement of a prior removal order.  In *Anderson*, petitioner claimed her reentry was lawful because her passport was stamped by a border official at a checkpoint, indicating she was legally "admitted".  611 F.3d at 277.  In *Martinez*, petitioner had illegally crossed the border, then reapplied to DHS under a different identity, and received a new immigration card without revealing he had been deported previously.  740 F.3d at 1043.  In both instances, our court rejected the contention petitioners had been lawfully admitted into the United States, because there, as here, the Attorney General did not give prior consent.

Terrazas' claim further fails because he applies the wrong statutory language.  He urges that we look to *Matter of Quilantan*, 25 I. & N. Dec. 285, 290–91 (BIA 2010), and *Matter of Areguillin*, 17 I. & N. Dec. 308, 310 (BIA 1980), where the BIA held that, to meet the requirement an alien was "inspected and admitted or paroled into the United States", the alien need only show "procedural regularity" in his admission.  *Quilantan*, 25 I. & N. at 286–88 (citing 8 U.S.C. § 1255(a)); *see also Areguillin*, 17 I. & N. at 309–10 (same); 8 U.S.C. § 1101(a)(13)(A) (defining "admission" and "admitted").  No substantive showing of legal eligibility for entry was required.  *Quilantan*, 25 I. & N. at 286–93; *Areguillin*, 17 I. & N. at 309–10.

Neither BIA decision addressed the operative statute and regulation in this matter, however; nor do the opinions concern the same textual interpretation.  The operative statute and regulation in this matter use the word "reentered", not "admitted".  *See* 8 C.F.R. § 241.8(a)(3) ("Whether the alien *unlawfully reentered* the United States." (emphasis added)); *see also* 8

U.S.C. § 1231(a)(5) ("If the Attorney General finds that an alien has *reentered* the United States *illegally* . . . ." (emphasis added)).  The regulation explicitly requires the immigration officer make a finding the alien "unlawfully reentered" in order to reinstate a prior order of removal, 8 C.F.R. § 241.8(a)(3), not find the alien was "admitted".

Terrazas did not have permission from the Attorney General to reenter the country.  Therefore, his reentry was unlawful.

## III.

For the foregoing reasons, the petition is DENIED.